THE CHRISTOBAL COLON.

CAVALIER *v.* THE CHRISTOBAL COLON.

*(District Court, E. D. Louisiana. December 26, 1890.)*

MARITIME LIENS—DAMAGE FOR TORTS.

A person injured by the negligence of the master and owners, while employed in loading coal upon a foreign vessel as a supply, has a lien upon the vessel for his damages.

In Admiralty.

*Percy Roberts* and *Alfred Goldthwaite*, for libelant.

*Bayne, Denegre & Bayne*, for claimant.

BILLINGS, J. This cause is submitted on the exception that no cause of action is shown in the libel against the vessel. It is not denied that there would be admiralty jurisdiction in an action *in personam*. The question presented is whether the libelant, upon the alleged facts, has a lien upon the vessel. The facts alleged in the libel are that the Christobal Colon was a vessel engaged in foreign commerce, (the claim filed by the respondent shows that she is a foreign vessel, her owners residing in Barcelona, Spain;) that she was taking on coal for a voyage; that the libelant was employed to aid in loading the coal; that while so employed, through the negligence of the master and owners in not closing certain sections of the hatchway, he fell through the same and was injured, and thereby has suffered damage in the amount of $10,000. The question then is whether a person injured by the negligence of the master and owners, while employed in loading coal supplied for a voyage upon a foreign steam vessel, for the damage which he has suffered has a lien upon the vessel.

Those who supplied the coal have a lien. It is difficult to see why those who were employed in loading the coal should not also have a lien. In several cases in this court judgments have been given against the vessel for injuries suffered by employes through the negligence of the owners. On appeal to the circuit court the libelants also recovered. It is true that no question was made in these cases as to the lien. See *The*

*Explorer*, 20 Fed. Rep. 135, and *The Mandalay*.[1] In *Cope* v. *Vallette Dry-Dock*, 10 Fed. Rep. 144, this court gives a brief summary of the doctrine of maritime liens and their origin, and the measure or test as to their existence, as follows:

"The reason of this precise discrimination is that, with the exception of derelict and things found, and the ship, her cargo, and freight, there could be no basis in reason for a lien which must exist in order to support a libel *in rem.* The ship and all things which pertain to it, are, in the law of admiralty, clothed with personality, so far as responsibility goes. Those who repair or loan upon her, or equip or man her, and those who deal with her, and those who are injured by her, and those who save her, look to her. The reason of this is that she was often far distant from her home and owners, and commerce was vastly facilitated by the law thus endowing her with the attributes of a person. This is the origin of the doctrine of liens in the maritime law, and by this it is to be measured."

Applying this test, it is clear that it is in the interests of vessels as essential that they should, when in foreign ports, have the capacity to become indebted as things, for damage suffered by those who load a necessary supply as for the supply itself, and that it is essential in both cases, the reason being that without such a capacity it might be impossible for ships to get supplies or procure their being loaded where, as here, the owners lived in remote foreign lands. In *Ex parte Easton*, 95 U. S. 68, after a most elaborate discussion of all the law upon the question whether wharfage carries a lien, the court held that it does, on the ground that (page 68) "such a contract being one made exclusively for the benefit of the ship or vessel, a maritime lien arises." In *The Max Morris*, 11 Sup. Ct. Rep. 29, (*Morris* v. *Curry*,) a case in which Mr. Justice BLATCHFORD rendered the opinion of the supreme court at the present term, November 7, 1890, the case as stated by him is precisely this case,—"that of a libelant employed to load coal by a stevedore having a contract for loading coal, and who fell from a bridge to the deck while on the vessel, in consequence of the negligence of those in charge of her." This case was tried in the district court, and an able opinion given by Judge BROWN in rendering judgment for libelant. 24 Fed. Rep. 860. On appeal to the circuit court a difference of opinion was certified to by the circuit judges as to the propriety of dividing the damages in such a case of tort, (other than collision,) and the case was very fully considered, and the decree against the vessel for damages affirmed. 28 Fed. Rep. 881. Neither in the district nor circuit nor supreme court was any question made as to the lien, and the propriety of the consequent proceeding *in rem.* I think that the authorities, so far as they bear upon the question, as well as the reason of the lien for supplies, viz., that the ship may, in the absence of foreign owners, upon its own credit, obtain supplies, and thus be able to continue her navigation without interruption or delay, lead to the conclusion that the libelant upon the case stated in the libel, and as is shown in the claim, has a lien upon the vessel, and that the suit *in rem* is properly brought.

The exception is therefore overruled.

[1] Not reported.