706 F.2d 641
 1987 A.M.C. 818
 Norman P. OVERSTREET, Plaintiff,
Anita Ann Overstreet, Individually and as Representative on
Behalf of Her Children, Deedee Dawn Overstreet, et
al., Intervenors-Appellants,
v.
The WATER VESSEL "NORKONG," Her Hull, Tackle, Equipment and
Appurtenances, et al., Defendants-Appellees.
 No. 82-4191.
 United States Court of Appeals,
Fifth Circuit.
 June 6, 1983.
 
 David C. Frazier, Larry A. Smith, Pascagoula, Miss., Rod S. Squires, Waco, Tex., for intervenors-appellants.
 Gregg L. Spyridon, William E. Wright, New Orleans, La., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before RUBIN, GARZA, and WILLIAMS, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 We are urged to expand an ancient remedy to accommodate a new right. A seaman libelled a foreign vessel for injuries allegedly sustained while he was employed aboard the vessel. The owner supplied a release bond and the vessel was released from seizure. Over a year later the seaman's estranged wife sought to intervene in the suit on her own behalf and on behalf of the children of the marriage to assert the cause of action for loss of consortium first recognized by this court in 1981, on the thesis that the surety bond covered not only the seaman's claim but theirs. The district court, 538 F.Supp. 53, denied the intervention in reliance on an 1895 Supreme Court decision, The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1895). Finding that, in principle, The Oregon 's wake still controls our course, we affirm.
 
 
 2
 The seaman, Norman P. Overstreet, was injured while working aboard the M/V NORKONG, as a member of its crew, on February 16, 1980. Overstreet sued the NORKONG in rem under general maritime law on grounds of unseaworthiness.[1] He also sued her owner, Asiatic Drilling Company (Asiatic), and his employer, Scan Drilling Company (Scan), in personam, under the Jones Act, 46 U.S.C. Sec. 688 (1976), for negligence. On the day Overstreet filed his complaint, the district court issued a warrant for the arrest of the NORKONG to answer to both the in rem and in personam claims. The warrant was executed, and the vessel brought to Pascagoula, Mississippi. Asiatic provided a bond issued by Insurance Company of North America (INA) in the amount of $750,000, the condition of which was that Asiatic and INA would "pay the said plaintiff the amount awarded by the final decree rendered in" the proceeding. The vessel was thereupon released and sailed away, never, perhaps, to return. After a hearing, the district court dismissed Overstreet's complaint against Asiatic and Scan for lack of personal jurisdiction. The district court also granted the NORKONG's motion to strike from the complaint Overstreet's allegations of negligence under the Jones Act. Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827 (1928) (Jones Act claim based on negligence is solely in personam and may not be asserted against vessel). The bond must now answer only to Overstreet's unseaworthiness claim against the vessel.
 
 
 3
 Mrs. Overstreet, appearing individually and for her four minor children, seeks to assert an in rem claim under the same bond for what she indiscriminately describes as "loss of consortium, society and services" arising from her husband's injuries. She contends that she has a right to intervene under Fed.R.Civ.P. 24(a)(2). It is a prerequisite of her intervention that she claim "an interest relating to the property or transaction which is the subject of the action," so we examine first whether she has such an interest in the sole property that is within the court's jurisdiction, the INA bond that stands in the place of the vessel.[2]
 
 
 4
 In 1981 we held that the spouse of an injured seaman has a cause of action for loss of the seaman's society separate from the seaman's claim for his injuries, and that the spouse's claim need not be asserted in the same proceeding as the seaman's claim.[3] Because the spouse's claim turns on the same facts and involves the same issues, presentation of both claims in the same action, when practicable, is desirable.[4] But the claim is not the seaman's. It is not a "latent development of [his] damages," as Mrs. Overstreet contends. It is a separate claim, asserted by a separate party, for separate damages.
 
 
 5
 In The Oregon, after a libel had been filed against the vessel, the surety gave a stipulation for its release. The court refused to allow additional claimants to intervene, saying, "We know of no authority which permits the liability of sureties upon such a stipulation to be enlarged by the inclusion of claims other than the ones which the stipulators agree to pay."[5] It continued, explaining why it found the district court in error, "But if, after the stipulation is given, and the vessel is discharged from custody, other libels are filed, a new warrant of arrest must be issued, and the vessel again taken into custody."[6]
 
 
 6
 The rationale of The Oregon was in part that permitting the intervention might prejudice the original libellant if the sureties were unable to respond to the full amount of their stipulation, or to an amount sufficient to pay all the claims.[7] Mrs. Overstreet seeks to obviate the problem by conceding priority to her husband's claims. She has, therefore, persuaded us that this reason for the decision in The Oregon is not applicable here.
 
 
 7
 A second reason for refusing intervention in The Oregon was that "[t]he stipulators may be so well satisfied that the [owner of the vessel] has a defense to the original libel as to be willing to take upon themselves the contingency of a decree requiring its payment, but they may neither know, nor be able to conjecture, what other demands may be made against the property."[8] Mrs. Overstreet correctly points out that her claim stands or falls with her husband's and, if he fails, so does she. But this does not mean that INA should reasonably have anticipated, when it negotiated the bond, the interjection of her consortium claim and those of her four children into Overstreet's personal injury action, or that INA could estimate the amount that she and her children might claim. In all likelihood, INA was not apprised of Overstreet's family relationships, nor able to conjecture the degree to which his accident might impair those relationships, when it agreed to post bond for a certain premium. While neither the probability of losing the case nor INA's maximum exposure would be increased by the intervention of Mrs. Overstreet and her children, the amount of the possible award, up to the bond's maximum, would be enlarged. The evidence gives us no way to determine whether this would have affected INA's willingness to supply the bond on the fee charged.
 
 
 8
 The Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure provide for release of an arrested vessel on the giving of either a "special bond" [Rule E(5)(a) ] or a "general bond" [Rule E(5)(b) ]. The special bond is given for libels that have already issued. If the parties do not agree on an amount, it is to be "an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs." On the other hand, a general bond is given for actions that may subsequently be brought in which the vessel may be attached or arrested.[9] The bond given here was a special bond, and its effect is prescribed by the Rule. When a shipowner secures the release of a vessel seized pursuant to process in rem, the Supplemental Rules permit the shipowner to restrict, expressly, his appearance to the defense of that claim and that appearance does not constitute an appearance for the purpose of any other claim with respect to which process is not available or has not been served. Fed.R.Civ.P.Supp.R. E(5). Whatever the reason for the rule, it is explicit and categorical.
 
 
 9
 If a special bond is not obtained to secure the release of an arrested vessel, and the vessel is sold to meet the resulting judgment, the proceeds of the sale are deposited in the registry of the court. Third persons who claim an interest in the proceeds may then intervene.[10] This, however, is not an intervention in the suit leading to sale. It simply permits all those who did not participate in that proceeding, but who have claims against the vessel that were obliterated by the sale, to assert their claims against the fund into which the vessel has been converted. The proceeds remaining after the libel has been satisfied represent the vessel.[11] The surety bond provides no such residual fund for other claimants. It is posted to assure the payment of a single claim, not to stand in place of the vessel for all claims that might be asserted against her.
 
 
 10
 Mrs. Overstreet contends that the bond should be read in accordance with the intent of the court and that, because the magistrate who fixed the amount of the bond also held that her claim could be asserted against it, we should divine that it was his intention to require the bond to protect against her claims. There are several insurmountable obstacles to this conclusion. The first is that the bond is not ambiguous. The second is that the magistrate did not dictate the terms of the bond, only its amount. And the final one is that he has never suggested that this was his original intention.
 
 
 11
 We are unable to distinguish The Oregon on the basis that it involved a stipulation rather than a bond.[12]
 
 
 12
 Finally, Mrs. Overstreet argues that we are not bound by The Oregon in determining her right of intervention because the cause of action for loss of consortium did not exist when The Oregon was decided. She urges us to follow the example of the Supreme Court in Moragne v. State Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), in which that Court concluded that the principles underlying the doctrine of stare decisis did not counsel against overruling a prior decision. The power to overrule the Supreme Court's decision lies in that court, not in us. While there may be occasional situations when subsequent Supreme Court opinions erode the authority of an earlier Supreme Court case without explicitly overruling it so that we may follow the Court's later lead,[13] no such change has occurred with regard to the posting of bonds to secure the release of vessels. While the few cases reported since 1895 involving the issue did not involve loss of consortium, The Oregon has been followed. The Willamette, 70 F. 874 (D.C.Ill.1892); Norker v. The S/T Sister Katingo, 201 F.Supp. 223 (D.Conn.1962). Indeed the Supplemental Rules, adopted in 1966, appear to confirm, not to undermine, The Oregon. The genesis of additional claims by new decisions does not alter the reading of the bond.
 
 
 13
 In view of the result we have reached, we do not decide whether the claims of a spouse and child for "loss of consortium and society and services" occasioned by a seaman's injury are supported by a maritime lien[14] or whether the Overstreet children, like their mother, have a cognizable claim separate from that of their father.
 
 
 14
 For these reasons, the judgment is AFFIRMED.
 
 
 
 [1]
 The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760, 764 (1903) (vessel and her owner are liable for injuries to seaman in consequence of unseaworthiness)
 
 
 [2]
 Once a vessel is released from arrest by a bond, the vessel itself can no longer be held to answer for the claims the bond is designed to meet. The bond is the claimant's sole source of recovery. See The Oregon (stipulation deemed substitute for vessel itself); G. Gilmore & C. Black, The Law of Admiralty Sec. 9-89 (1975); Harmon, Discharge and Waiver of Maritime Liens, 47 Tulane L.R. 786, 795 (1973) ("The effect of the filing of a bond to release a vessel from seizure is to transfer the lien from the ship to the fund represented by the bond or stipulation.")
 
 
 [3]
 Cruz v. Hendy Int'l Co., 638 F.2d 719, 725-26 (5th Cir.1981)
 
 
 [4]
 Kotsiris v. Ling, 451 S.W.2d 411 (Ky.1970) (joinder not required, although it is desirable and will probably occur in most cases)
 
 
 [5]
 The Oregon, 158 U.S. at 206, 15 S.Ct. at 812, 39 L.Ed. at 952
 
 
 [6]
 Id. at 210, 15 S.Ct. at 814, 39 L.Ed. at 954
 
 
 [7]
 Id. at 210, 15 S.Ct. at 814, 39 L.Ed. at 954
 
 
 [8]
 Id. at 206, 15 S.Ct. at 812, 39 L.Ed. at 952
 
 
 [9]
 7A J. Moore & A. Pelaez, Federal Practice: Admiralty p E.13 & n. 7 (1982)
 
 
 [10]
 Jackson v. Inland Oil and Transport Co., 318 F.2d 802 (5th Cir.1963); Crabtree v. The S.S. Julia, 290 F.2d 478 (5th Cir.1961). See Fed.R.Civ.P.Supp.R. E. (9)(c) (proceeds of sale to be paid into registry and disposed of according to law)
 
 
 [11]
 The Oregon, 158 U.S. at 211, 15 S.Ct. at 814, 39 L.Ed. at 954
 
 
 [12]
 7A J. Moore & A. Pelaez, Federal Practice: Admiralty p E.13 & n. 17 (1982) ("[T]he terms 'bond' and 'stipulation' are used interchangeably in the admiralty ...."). The distinction that once existed is explained by Gilmore and Black, The Law of Admiralty 796-97 (2d ed. 1975) (footnote omitted):
 The release of ships from arrest has been governed both by a statutory provision (which is now 28 U.S.C.A. Sec. 2464) and by the former Admiralty Rules. The statute provided for the posting of bonds with the United States Marshal in specified amounts. The Rules provided for release on a stipulation for value entered into by the parties with the amount of the stipulation and the security therefor to be determined by the district judge if the parties could not agree. The stipulation for value was the procedure usually followed for the excellent reason (from the shipowner's point of view) that the release value under stipulation was less than the bonds required under Sec. 2464.
 The authors then explain that, "The matter is currently covered by Supplemental Rule E(5) (F.R.C.P.) which, according to the Advisory Committee's Note, restates the substance of the former Admiralty Rules and also incorporates 28 U.S.C.A. Sec. 2464 'with changes of terminology, and with a substantial change as to the amount of the bond.' " Id. at 797. They characterize the consolidation as a "light-hearted approach to Sec. 2464." Id. Gilmore and Black state, "Bonds under Sec. 2464 and stipulations for value under the former Admiralty Rules seem always to have been treated as identical in their legal effect. Presumably, bonds under subsection (a) and (b) of Rule E(5) will continue to be treated as having the same legal effect as stipulations under subsection (c)." Id. at 798.
 
 
 [13]
 Rowe v. Peyton, 383 F.2d 709, 714 (4th Cir.1967), aff'd, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968)
 
 
 [14]
 Most maritime claims give rise to liens, but, e.g., a seaman's statutory action for personal injury under the Jones Act, 46 U.S.C. Sec. 688 (1976), does not. See G. Gilmore & C. Black, The Law of Admiralty Sec. 9-20 & nn. 86, 95b (1975) (Jones Act claims based on shipowner's negligence do not give rise to liens, but on principle maritime torts should create liens)