MELWIRE TRADING COMPANY, INC., Plaintiff-Appellant,

v.

M/V CAPE ANTIBES, etc., in rem; and Aria Shipping Co., Ltd, in personam, Defendants-Appellees.

No. 84–6644.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1986.

Decided March 3, 1987.

Joseph N. Mirkovich, Long Beach, Cal., for plaintiff-appellant.

David Woolley, Los Angeles, Cal., for defendants-appellees.

Before FLETCHER, NELSON and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiff-appellant, Melwire Trading Company (Melwire), filed suit against the *M/V Cape Antibes*, (Antibes) seeking to recover the costs associated with certain shipping delays. The district court dismissed Melwire's action for lack of *in rem* jurisdiction. We affirm.

## I

The Antibes sailed from Northfleet, England, on June 4, 1979 with a cargo of cement destined for delivery to Melwire in San Diego, California. The vessel was scheduled to arrive in San Diego twenty-one days later, on June 25, 1979. Because of a mechanical failure in the crankshaft of its port engine while off the coast of Cork, Ireland, the Antibes did not arrive in San Diego until October 2, 1979—a delay of ninety-nine days.

During the delay, Melwire arranged to buy three smaller shipments of cement from Panama to satisfy its contractual obligations. Melwire also incurred additional interest expenses in maintaining its letter of credit financing the cargo beyond its due date of July 1, 1979. Melwire had only enough space in its warehouse for the shipment and, because of the uncertainties caused by the Antibes' delay, could not order additional shipments of cement.

When the vessel arrived in San Diego, there was no actual physical injury to the cargo. The ship's cranes, however, malfunctioned while unloading the cargo, and Melwire incurred additional costs associated with this breakdown.

Melwire filed suit in federal district court against the Antibes *in rem* and against Aria Shipping Co., Ltd., *in personam.* Aria Shipping Co. is presumably the owner of the Antibes, although this is not apparent from the pleadings. The Antibes moved to dismiss for lack of jurisdiction *in rem.* The district court granted the motion but added that its ruling did not affect Melwire's claims against Aria Shipping Co. *in personam.*

## II

Defendant Antibes' motion to dismiss was properly before the district court pursuant to 28 U.S.C. § 1333 under which district courts have exclusive jurisdiction of admiralty cases.[1] We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(3) which permits appeals from interlocutory decrees that affect the rights of parties in admiralty cases.

Whether Melwire's claims give rise to a maritime lien such that Melwire can pursue an action *in rem* against the vessel is a question of law reviewed de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III

Melwire claims that the district court erred in its dismissal of the *in rem* action based upon a finding that none of Melwire's claims give rise to a maritime lien enforceable in an action *in rem* against the vessel.

 A maritime action *in rem* has traditionally been available only in connection with a maritime lien. Claims not creating a maritime lien must be pursued *in personam. The Resolute,* 168 U.S. 437, 440–42, 18 S.Ct. 112, 113–14, 42 L.Ed. 533 (1897). Maritime liens must be construed *"stricti juris,* and cannot be extended by construc-

tion, analogy, or inference." *Osaka Shosen Kaisha v. Pacific Export Lumber Co.,* 260 U.S. 490, 499, 43 S.Ct. 172, 174, 67 L.Ed. 364 (1923). Consequently, "[t]he only liens recognized today are those created by statute and those historically recognized in maritime law." *In re Admiralty Lines, Ltd.,* 280 F.Supp. 601, 604–05 (E.D.La.1968), *aff'd mem.,* 410 F.2d 398 (5th Cir.1969).

Melwire's claims are for (1) excess financing costs; (2) mitigation costs associated with Melwire's order of three smaller shipments to cover its contractual obligations; (3) loss of profits from follow-up shipments which would have been ordered by Melwire, were it not for the *delay* in the vessel's arrival in San Diego; and (4) costs of hiring replacements for the *Antibes'* equipment, which malfunctioned while offloading the cement. No statute authorizes a maritime lien for damages resulting from a shipping delay or equipment malfunction; thus any lien arising from Melwire's claim against the *Antibes* must come from a common law source.

 It is well established that breach of a shipping contract may give rise to a maritime lien. *Krauss Brothers Lumber Co. v. Dimon Steamship Corp.,* 290 U.S. 117, 54 S.Ct. 105, 78 L.Ed. 216 (1933) (holding that a lien arises for overpayment of freight). However, no cases authorize the imposition of a lien upon a ship when a carrier breaches a shipping contract, but does not cause physical damage to the cargo. *See The Saturnus,* 250 F. 407 (2d Cir.) (noting that privileges, from which American maritime liens are derived, have never been "properly awarded for an expense put on a shipper and not caused by physical damage to goods actually carried and by the act of transport"), *cert. denied,* 247 U.S. 521, 38 S.Ct. 583, 62 L.Ed. 1247 (1918). Because a maritime lien is not a matter of

1. We note that, although the district court dismissed Melwire's *in rem* claims "for lack of jurisdiction," the actual basis for the district court's dismissal was its conclusion that none of Melwire's claims gave rise to a maritime lien enforceable in an action *in rem.* In *The Reso-*

*lute,* 168 U.S. 437, 440, 18 S.Ct. 112, 113, 42 L.Ed. 533 (1897), the Supreme Court held that the question as to whether a maritime lien exists is not one of jurisdiction, but rather involves the merits.

public record, it will be created only when there is some damage to cargo actually carried by the vessel against which the complaining party seeks *in rem* jurisdiction. *See e.g., Osaka*, 260 U.S. at 500, 43 S.Ct. at 174 ("no lien arises in admiralty except in connection with some visible occurrence relating to the vessel or cargo") (quoting *The S.L. Watson*, 118 F. 945, 952 (1st Cir.1902)).

In this case, not only was the shipment delivered undamaged, but the record shows that it was worth more on the delayed date of delivery than on the planned date of delivery. We decline to expand the concept of a maritime lien to include damages for delay or equipment malfunction when there has been no physical damage to the cargo. Melwire therefore cannot maintain an action *in rem* against the *Antibes* for the losses incurred.[2]

AFFIRMED.

---

**2.** This holding does not affect any action by Melwire *in personam* against the owner of *An-* *tibes.*