**David HUNLEY; Ned Lentz; Michael Zimick; Austin Lentz, Plaintiffs-Appellees,**

**v.**

**ACE MARITIME CORP.; Shinto Shipping Co. Ltd.; Alps Shipping PTE, Defendants,**

**and**

**M/V Eastern Grace, her engines, tackle, etc., Defendant-Appellant.**

**M/V EASTERN GRACE, Plaintiff-Appellant,**

**v.**

**Mary LENTZ; Austin Lentz, Defendants-Appellees.**

Nos. 89–35306, 89–35394.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 18, 1990.

Decided March 6, 1991.

Robert I. Sanders, Kathleen A. McKeon and Kim Jefferies, Wood, Tatum, Mosser, Brooke & Landis, Portland, Or., for defendant-appellant, plaintiff-appellant M/V Eastern Grace.

Peter A. Ozanne & Daniel F. Knox, Schwabe, Williamson & Wyatt, Portland, Or., for plaintiffs-appellees, defendants-appellees Hunley, Lentz, & Zimick.

Before GOODWIN, NELSON and LEAVY, Circuit Judges.

D.W. NELSON, Circuit Judge:

## I. FACTS

These twin admiralty actions for maritime injury stem from a collision on the high seas between the TRYEND and the M/V EASTERN GRACE. On May 10th, 1985 the crew of the TRYEND secured the vessel for the night. The TRYEND, owned by Austin and Mary Lentz, drifted without power, without a lookout, and without displaying a not-under-command signal in a commercial shipping lane on the high seas.

The EASTERN GRACE posted two men to early morning bridge watch. They did not speak English. Their radio was tuned to the emergency channel and although the EASTERN GRACE maintained operable radar equipment, it was not in use. The weather conditions were good and visibility was at least ten miles.

The vessels collided at about 6:10 a.m. on May 11th. The district court found that it was full daylight by this time. Lentz radioed several "Mayday" emergency calls and identified the EASTERN GRACE as the colliding vessel. Lentz heard responses from Captain Price of the M/V EXXON PHILADELPHIA and another vessel, the SHADOW DEW. The EASTERN GRACE did not respond and it steamed away. Within minutes of the collision the TRYEND sank. The EXXON PHILADELPHIA altered course to begin the rescue.

Lentz and his crew then abandoned their vessel. Captain Price radioed the EASTERN GRACE several times for assistance without success. Lentz and his crew came aboard the EXXON PHILADELPHIA about three hours after the collision. During the rescue operation, a crewperson from the EXXON PHILADELPHIA was injured. As a result, the EASTERN GRACE made a payment to the Exxon Shipping Company of $115,000 to settle the ensuing claim.

## II. PROCEEDINGS BELOW

In the first action, Lentz filed a maritime action in federal district court to recover damages for the loss of the ship, the fish-ing gear, and the catch on board, and for personal injuries sustained as a result of the collision. Lentz alleged that the EASTERN GRACE violated the International Regulations for Preventing Collisions at Sea (COLREGS), codified at 33 U.S.C. §§ 1601–1608 (1988), by not avoiding the collision (the duty of the nonprivileged vessel in an overtaking or crossing situation) by failing to keep a lookout, by failing to sound a danger signal when collision was imminent, and by failing to stand by and render assistance, as required by the Stand By Act, codified as amended, 46 U.S.C. §§ 2303, 2304 (1988).

The district court held that each vessel failed to maintain a proper lookout and that therefore each vessel was equally responsible for the collision. However, the district court did not determine which vessel was the privileged vessel, or whether a local custom of drifting without a lookout existed in the waters off Oregon. On appeal, we therefore reversed in a memorandum disposition and remanded to the district court for additional findings as to the relative fault of each party as required by *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). We also remanded for consideration of personal injury compensation to Lentz and of possible punitive damages. 852 F.2d 571.

On remand, the district court conducted the fault analysis required by *Reliable Transfer* and reached the conclusion that factors other than both parties' failure to maintain a proper look-out played an insignificant part in causing the accident. Accordingly, it ruled that the two parties were equally at fault with regards to the accident. In addition, the district court awarded Lentz $5,000 for personal injuries suffered as a result of the collision and $10,000 for added distress and suffering caused by the EASTERN GRACE's failure to stand by and render assistance. Finally, finding that such behavior by the EASTERN GRACE was grossly negligent, the court awarded Lentz $25,000 in punitive damages.

The EASTERN GRACE filed a separate action against Austin and Mary Lentz for contribution equal to one-half the amount of the settlement it had paid to the Exxon Shipping Company. Finding the EASTERN GRACE's failure to render assistance to the TRYEND to be a superseding cause of the damages suffered by the EXXON PHILADELPHIA, the district court ruled that contribution was not required.

The EASTERN GRACE has moved for reconsideration in both cases; they have been consolidated on this appeal.

### III. DISCUSSION

#### A. *Emotional Damages*

■ The district court's award of damages to Lentz for emotional distress arising out of the EASTERN GRACE's failure to stand by and render assistance is subject to review for clear error. *Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790, 793 (9th Cir.1986).

On remand, the district court reviewed the facts and awarded $10,000 for "added distress and suffering caused by the failure of the EASTERN GRACE to stand by and render assistance." We do not find the district court's findings to be clearly erroneous, and thereby affirm its award.

#### B. *Punitive Damages*

We review *de novo* the legal conclusion that punitive damages are available. *Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1347 (9th Cir.1987), *modified on other grounds,* 866 F.2d 318, *cert. denied,* — U.S. —, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989). At this late stage of the procedure, the EASTERN GRACE claims that the district court erred in awarding punitive damages in an action *in rem* against the vessel. While we deplore its tardiness, we are persuaded by the argument.

■ It is settled by now that a maritime action *in rem* will be available "only in connection with a maritime lien." *Melwire Trading Co., Inc. v. M/V Cape Antibes,* 811 F.2d 1271, 1273 (9th Cir.), *amended on other grounds,* 830 F.2d 1083 (1987). Conversely, claims that do not create a mari-

time lien "must be pursued *in personam*." *Id.*

■ Here, appellants filed suit against the EASTERN GRACE *in rem.* However, a claim for punitive damages does not give rise to a maritime lien. *Best v. Sperling Shipping & Trading Co.,* 1969 A.M.C. 39 (C.D.Cal.1969) (although seaman's claim for unpaid wages and maintenance creates a maritime lien, his claim for punitive damages did not and therefore was disallowed). In *The William H. Bailey,* 103 F. 799 (D.Conn.1900), *aff'd mem.,* 111 F. 1006 (2d Cir.1901), it was held that:

> in a proceeding *in rem* the offending thing can[not] be made to answer for damages other than those actually received.... In the American admiralty a tort creates a maritime lien or privilege, —a jus in re. This lien or privilege, however, is only as security for actual damages for the wrong done, for which the ship herself is bound to make compensation.

103 F. at 800. The case, concededly, is old. But age has not eroded the principle for which it stands. The concept of maritime lien does not embrace punitive damages.

#### C. *Contribution*

We review de novo the district court's grant of summary judgment to Austin and Mary Lentz, viewing the evidence most favorably to the EASTERN GRACE. *See White v. Roper,* 901 F.2d 1501, 1503 (9th Cir.1990). The EASTERN GRACE claims that the district court erred as a matter of law in refusing to require the Lentzes to contribute to the settlement paid to the Exxon Shipping Company.

■ A right to contribution between joint tortfeasors exists under admiralty law. *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 110, 94 S.Ct. 2174, 2176, 40 L.Ed.2d 694 (1974); *Odd Bergs Tankrederi A/S v. S/T Gulfspray,* 650 F.2d 652, 653 (5th Cir.1981). Generally, liability is apportioned according to fault. *Reliable,* 421 U.S. at 411, 95 S.Ct. at 1715. In this case, the district court found the TRYEND equally at fault in causing

the initial collision. However, in ruling for the Lentzes, the district court held that:

> The failure of the M/V EASTERN GRACE to render assistance to the F/V TRYEND was a superseding cause of the damages suffered by the M/V EXXON PHILADELPHIA. The M/V EASTERN GRACE is not entitled to contribution from the owners of the F/V TRYEND for payments it made in settling the claims of the M/V EXXON PHILADELPHIA and/or its crew members against the M/V EASTERN GRACE.

In this appeal, the EASTERN GRACE argues that because the chain of events that culminated in the injury to the EXXON PHILADELPHIA crew member began with the collision, the Lentzes should bear their apportioned share of the loss.

■ While pure logic supports the EASTERN GRACE's view, logic contemplates chains of causation that the law does not. "Once it is established that the defendant's conduct has in fact been one of the causes of the ... injury, there remains the question whether the defendant should be legally responsible for the injury." *W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on Torts* [hereinafter *Prosser & Keeton*] § 42 at 272–73 (footnote omitted) (5th ed.1984). The "problem is not primarily one of causation at all, since it does not arise until cause in fact is established. It is rather one of the policy as to imposing legal responsibility." *Id.*

§ 44 at 301; *see also Nunley v. M/V Dauntless Colocotronis*, 727 F.2d 455, 463–66 (5th Cir.) (*en banc*), *cert. denied sub nom. Dravo Mechling, Inc. v. Combi Lines*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 63 (1984). In short, "we are dealing with problems of responsibility, and not physics." *Prosser & Keeton* § 44 at 302.

■ In legal terms, the TRYEND's conduct was not the proximate cause of the crewman's injury "if another cause intervenes and supersedes [its] liability for the subsequent events." *White v. Roper*, 901 F.2d at 1506. In making this determination, we must keep in mind considerations of public " 'convenience, of public policy, of a rough sense of justice.' " *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 477 n. 13, 102 S.Ct. 2540, 2547 n. 13, 73 L.Ed.2d 149 (1982) (*quoting Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 352, 162 N.E. 99 (1928) (Andrews, J., dissenting)).

■ Although the unfolding events originated, in part, in the TRYEND's actions, we have little difficulty in concluding, as did the district court, that the EASTERN GRACE's subsequent failure to stand by and assist the vessel was "extraordinary" and, indeed, "extraordinarily negligent." These characteristics militate strongly in favor of a determination that an intervening force supersedes prior negligence. *See Restatement (Second) of Torts* §§ 442, 447 (1965).[1] In sum, the EASTERN GRACE's behavior was neither normal nor reasonably foreseeable.

---

1. The *Restatement* sets out the following relevant principles in determining whether the intervening act is a superseding cause:

> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other

hand, is or is not a normal result of such a situation;

> . . . . .
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.* § 442. An intervening negligent act will not supersede an actor's initial negligent conduct if the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Id.* § 447(c).

 Considerations of public policy bolster this conclusion. Although the Stand By Act, 46 U.S.C. § 2303 (1988), imposing a maritime duty of assistance,[2] does not apply because the incident took place in international waters, the EASTERN GRACE concedes that a similar duty arises from general maritime law. Indeed, "[t]he law of admiralty has always sought to 'encourage and induce men of the sea to go to the aid of life and property in distress.'" *Berg v. Chevron U.S.A., Inc.*, 759 F.2d 1425, 1429 (9th Cir.1985) (*quoting* 3A M. Norris, *Benedict on Admiralty* § 234 (7th ed.1980)). The duty is all the more imperative where the prospective rescuer played a part in the original accident itself. Principles of foreseeability and of public policy lead us inexorably to the conclusion that the EASTERN GRACE's grossly negligent conduct superseded the TRYEND's liability.

## CONCLUSION

The district court's holding regarding the award of damages for emotional distress is affirmed. Likewise, we affirm its ruling that the EASTERN GRACE be held solely responsible for the injuries of the seaman aboard the rescuing vessel. Insofar as the judgment imposed punitive damages on the EASTERN GRACE, it is reversed.

AFFIRMED in part and REVERSED in part.

---

**2.** 46 U.S.C. § 2303(a)(1) provides in pertinent part:

The master or individual in charge of a vessel involved in a marine casualty shall ... render necessary assistance to each individual affected to save that affected individual from danger caused by the marine casualty....