**Robert C. USHER; Kristi K. Usher, Plaintiffs–Appellants,**

v.

**M/V OCEAN WAVE, her engines, tackle, furnishings, etc., in rem, Defendant– Appellee.**

No. 92–35606.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1994.

Decided June 14, 1994.

Charles Robinowitz, Portland, OR, for plaintiffs-appellants.

Kim Jefferies, Wood Tatum Wonacott & Landis, Portland, OR, for defendant-appellee.

Before: BROWNING, KOZINSKI, and NOONAN, Circuit Judges.

PER CURIAM:

On December 27, 1988 Robert Usher was injured while working as a longshoreman aboard the M/V Yuhoh (now the M/V "OCEAN WAVE"). On November 12, 1991, two years and eleven months later, Robert Usher and his wife Kristi filed this action *in rem* against the OCEAN WAVE seeking damages for Robert's physical injuries and Kristi's loss of consortium. The district court dismissed both claims as barred by laches and Kristi's claim on the additional ground there was no maritime lien and therefore no *in rem* jurisdiction for a claim of loss of consortium, 835 F.Supp. 1220. The Ushers argue the court erred in (1) applying the doctrine of laches rather than the three-year limitations provided in 46 App.U.S.C. § 763a and in (2) concluding it had no *in rem* jurisdiction over Kristi Usher's maritime claim for loss of consortium. We reverse and remand.

I.

Before 1980, there was no uniform statute of limitations for maritime claims. Claims for personal injuries at sea were governed by the three-year period provided in the Jones Act, 46 App.U.S.C. § 688. Claims for death on the high seas, whether *in personam* or *in rem,* were governed by the two-year period provided in former 46 U.S.C. § 763.[1] Other claims, including claims for injuries occurring within state territorial waters, were governed by the equitable doctrine of laches. *King v. Alaska Steamship Company,* 431 F.2d 994, 996 (9th Cir.1970). In 1980, Congress adopted § 763a, providing a uniform three-year statute of limitations for maritime personal injury and wrongful death claims. The district court concluded, and OCEAN WAVE argues, Section 763a was intended to apply only to *in personam* actions and the timeliness of *in rem* actions is still to be determined by application of the doctrine of laches.

"A court's objective when interpreting a federal statute is to ascertain the intent of Congress and to give effect to legislative will." *Turner v. McMahon,* 830 F.2d 1003, 1007 (9th Cir.1987) (citations and internal quotations omitted). The language and legislative history of Section 763a indicate Congress intended the three-year limitations period established by that section to apply to

---

**1.** This statute applied only where death occurred outside a state's territorial waters.

all maritime personal injury claims, including *in rem* actions previously governed by the doctrine of laches.

The words of Section 763a are general. They draw no distinction between suits *in personam* and *in rem:*

> Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued.

46 App.U.S.C. § 763a.

The legislative history affirms Congress's intention to establish a uniform period of limitations for all suits on maritime torts,[2] and to end reliance on the doctrine of laches.[3] "The stated intent of the legislation is to provide a uniform statute of limitations period for *all* maritime torts. In particular, Congress was concerned with eliminating the uncertainty caused by reliance upon the doctrine of laches to set the time limit for bringing the suit ..." *Friel v. Cessna Aircraft Co.,* 751 F.2d 1037, 1038 (9th Cir.1985) (citation omitted) (emphasis in original). Sponsors of the legislation in both the House and the Senate identified applications of the "indefinite common law" doctrine of laches to some personal injury claims as the source of the uncertainty, inconsistency and unpredictability leading to forum shopping and presentation of stale claims which the uniform statute of limitations was designed to eliminate. 123 Cong.Rec. 2591–92 (Feb. 11, 1980), (statements by Rep. Murphy and Rep. Dorman); Cong.Rec. 526,884 (1980) (statement by Senator Cannon). Excepting *in rem* proceedings from the uniform statute of limitations would have perpetuated the problem the statute was expressly changed to eliminate.

It follows that the Ushers' personal injury claims are not subject to the doctrine of laches, but rather to the three-year limitations period established by Section 763a. The authorities on which OCEAN WAVE relies are not to the contrary. *Induron Corp. v. M/V. Aigianis,* 1990 A.M.C. 1398, 1989 WL 225023 (D. N.J.), was not a personal injury action. *Trivizas v. Tanjong Shipping Co.,* 1982 A.M.C. 2520 (S.D.N.Y.1982), was brought before § 763a was passed.

## II.

In *Sea–Land Svcs. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Supreme Court held the right to bring a maritime action for wrongful death under *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), *see* G. Gilmore & C. Black, The Law of Admiralty, § 9–20 n. 95 ("No doubt the action for wrongful death under the general maritime law created by [*Moragne*] carries lien status."), encompasses the right of a decedent's widow to recover for loss of consortium, and the Fifth Circuit has treated as within its *in rem* jurisdiction actions brought under *Gaudet. See Sincere Navigation Corp. v. United States,* 547 F.2d 255 (5th Cir.1977) (No suggestion of problem with *in rem* jurisdiction over claim for loss of consortium in wrongful death action); *Matter of S/S Helena,* 529 F.2d 744 (5th Cir.1976) (same).

Recognition of a lien for claims under *Gaudet* is consistent with this court's statement

**2.** *See* H.R.Rep. No. 96–737, 96th Cong., 2nd Sess. 1 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3303 ("The purpose of the legislation is to establish a uniform national statute of limitations for maritime torts."); 123 Cong.Rec. 2591 (1980) (statement of Rep. Murphy) ("The bill ... would establish a uniform statute of limitation for actions seeking compensation for injury or death resulting from a maritime tort."); *Id.* at 2592 (statement of Rep. Dorman) ("The purpose of [the bill] is to establish a uniform statute of limitations for maritime torts."). *See also* H.R.Rep. No. 96–737, 96th Cong., 2nd Sess. at 4; 1980 U.S.C.C.A.N. at 3306 (Departmental Report, Secretary of Transportation) (The bill is "to provide for a uniform national three-year statute of limitations in actions to recover damages for person-

al injury or death, arising out of a maritime tort....").

**3.** CONG REC. S26,884 (1980) (statement of Sen. Cannon) ("By establishing a uniform 3–year statute of limitation for personal injury or death arising out of a maritime tort, [the bill] would eliminate the "laches" issue and therefore end existing confusion."). *See also* H.R.Rep. No. 96–737, 96th Cong., 2nd Sess. at 3; 1980 U.S.C.C.A.N. at 3305 (Departmental Report, U.S. Department of Justice) ("The bill would apply a specific 3–year statute of limitations to those maritime tort actions currently governed by the doctrine of laches.").

that " '[t]he only liens recognized today are those created by statute and those historically recognized in maritime law.' " *Melwire Trading Co. v. M/V Cape Antibes*, 811 F.2d 1271, 1273 (9th Cir.) (citations omitted), *amended on other grounds*, 830 F.2d 1083 (9th Cir.1987). Courts have long recognized liens in connection with maritime personal injury claims generally, *The Anaces*, 93 F. 240 (4th Cir.1899); *The Christobal Colon*, 44 F. 803, 804 (E.D.La.1890); *The General De Sonis*, 179 F. 123, 126 (W.D.Wash.1910); Gilmore & Black at § 9–20 n. 95, and *Gaudet* makes clear a claim for loss of consortium due to wrongful death fits squarely within the category of maritime personal injury claims.

■ In *American Export Lines v. Alvez*, 446 U.S. 274, 276, 100 S.Ct. 1673, 1674, 64 L.Ed.2d 284 (1980), the Supreme Court extended the right of recovery for loss of consortium to the wife of a longshoreman who was injured but not killed, and the Fifth Circuit has recognized the existence of a maritime lien for such claims. *See Mallard v. Aluminum Co. of Canada*, 634 F.2d 236, 239 n. 2 (5th Cir.1981) (Reversing dismissal of *in rem* action for loss of consortium under *Alvez* ). Allowing a lien for claims under *Alvez* is appropriate for the same reasons allowing a lien for claims under *Gaudet* is appropriate. Both claims are for compensation for physical injuries, and the right to such compensation has long been protected by a lien under general maritime law.

Denying such a lien would be contrary to the premise of *Alvez* that claims for loss of consortium arising out of fatal and non-fatal injuries are to be treated equally under maritime law. In recognizing a cause of action for loss of consortium based on non-fatal injuries, the Court pointed out that general maritime law provides the basis for recovery for both personal injury and wrongful death, and concluded "there is no apparent reason to differentiate between fatal and nonfatal

injuries in authorizing the recovery of damages." 446 U.S. at 281, 100 S.Ct. at 1677.[4] Similarly, since maritime law provides a lien to protect a widow's right under maritime law to recover for loss of consortium due to the wrongful death of her husband, there is no apparent justification for denying the same protection for loss of consortium due to injuries not resulting in death.

*Melwire Trading Co.* and *Hunley v. Ace Maritime Corp.*, 927 F.2d 493 (1991), are not to the contrary. *Melwire Trading Co.* merely refused to recognize a lien for breach of a shipping contract where the breach caused no physical damages to the cargo. 811 F.2d at 1274. Robert Usher, in contrast, suffered physical injuries historically recognized as a basis for recovery under maritime law. Similarly, *Hunley* refused to extend the lien to a claim for punitive damages on the ground that the lien "is only as security for actual damages for the wrong done, for which the ship herself is bound to make compensation." 927 F.2d at 496 (quoting *The William H. Bailey*, 103 F. 799 (D.Conn.1900), *aff'd*, 111 F. 1006 (2d Cir.1901)). Kristi Usher, in contrast, claims compensation for actual damage she suffered—loss of consortium—due to the injuries suffered by Robert Usher.

OCEAN WAVE suggests the Fifth Circuit's statement in *Overstreet v. Water Vessel Norkong*, 706 F.2d 641 (5th Cir.1983), that "[w]e are urged to expand an ancient remedy to accommodate a new right." *Id.* at 642, implies the lien should not be recognized for claims under *Alvez*. However, *Overstreet* addressed only whether the wife of an injured seaman could intervene in an action against the vessel. In affirming the denial of the wife's motion to intervene, the court specifically left open whether a maritime lien was available in connection with her claim for loss of consortium. *Id.* at 645.

■ We recognize that a maritime lien is an extraordinary remedy which should be

---

4. OCEAN WAVE offers the comment that the "continued vitality of *Alvez* is doubtful" in light of the Supreme Court's recent holding in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), that families of seamen have no maritime cause of action for loss of consortium because remedies for torts against seamen are now governed exclusively by the Jones Act, but OCEAN WAVE does not rely on this speculation as a ground for refusing to recognize a maritime lien in connection with the claim for loss of consortium which presently exists under *Alvez*.

allowed sparingly because it "is not a matter of public record." *Melwire Trading Co.,* 811 F.2d at 1274, and attaches to the vessel without notice. However, this is a characteristic of all maritime liens. Secrecy alone does not justify allowing the remedy for some types of maritime personal · injury claims but not for others that are indistinguishable by reason or authority.

REVERSED and REMANDED