Gary Eugene GAMMILL, Plaintiff,

v.

The BRADLEY T a/k/a Alabama Merchant a/k/a Stanton K. Smith, her engines, tackle, and the appurtenances, etc., Defendant.

Civ. A. No. 92–0275–P(R).

United States District Court,
W.D. Kentucky,
Paducah Division.

March 15, 1995.

James W. Owens, Paducah, KY, Bobby R. Wood, Keith S. Carlton, Corinth, MS, for plaintiff.

John R. Halpern, Goldstein & Price, St. Louis, MO, Burke B. Terrell, Hardy, Terrell & Boswell, Paducah, KY, for Tolen Marine, Inc.

## OPINION

RUSSELL, District Judge.

Plaintiff brought this *in rem* maritime action against the BRADLEY T for personal injuries sustained while working aboard that vessel. Tolen Marine, Inc. ("Tolen"), as owner of the vessel, has moved for summary judgment. For the following reasons, the motion is denied.

## BACKGROUND

Gammill was employed by Merchants Transportation, Inc. ("Merchants") as a deckhand aboard the ALABAMA MERCHANT, also known as the STANTON K. SMITH. In December of 1989 Gammill was injured while attempting to secure a lead wire on the vessel. Plaintiff alleges that the wire came loose and injured his arm when the ratchet he was using malfunctioned. The vessel was later renamed the BRADLEY T. Plaintiff commenced an action against Merchants in June 1991 in the Northern District of Mississippi.

In September 1991 Merchants sold the vessel to Tolen. In June 1992 counsel for Merchants withdrew from the case, and Merchants never obtained new counsel to defend the action. Concerned that Merchants had become insolvent, Gammill commenced this action *in rem* in November 1992 after it discovered Tolen as the new owner. Gammill obtained a judgment against Merchants in the amount of $350,000, but there is no indication in the record whether that judgment has been satisfied.

After Tolen declined to post a bond in lieu of having the vessel arrested, Gammill sought seizure of the BRADLEY T. Gammill was unable to locate the vessel for a year, but eventually succeeded in the arrest. Tolen then filed a claim to the vessel as its owner *pro hac vice* and the court has granted its motion to defend the suit. Although plaintiff's complaint was filed one month before the three-year statute of limitations period under 46 U.S.C.App. § 763a had run, Tolen seeks summary judgment on the ground that it is a bona fide purchaser for value and asserts plaintiff's claim is equitably barred by the doctrine of laches. Alterna-tively, defendant moves to dismiss on the ground that plaintiff's second amended complaint was not verified under Rule C(2), Supplemental Rules of Certain Admiralty and Maritime Claims.

## DISCUSSION

1. Summary Judgment Standard

Fed.Rul.Civ.P. 56(c) establishes that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are material to the outcome of a particular litigation. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

If the moving party meets that burden, the burden then shifts to the non-moving party to present "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. In applying these principles, the Sixth Circuit has stated that the standard for a summary judgment motion is that same as that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

a matter of law." *Street v. Bradford & Company,* 886 F.2d 1472, 1479 (6th Cir.1989).

### 2. Availability of Laches

■ Both the doctrine of laches and statutes of limitation are designed to bar stale claims where the plaintiff has failed to assert rights in a timely manner. Tolen's laches argument is essentially that plaintiff needed to record a lien against the BRADLEY T in order to protect his rights, and that merely bringing a claim against the current owner of the vessel is an inadequate assertion of his rights because it left subsequent bona fide purchasers without notice of the lien.

"A maritime lien is a privileged claim upon maritime property, such as a vessel, arising out of services rendered to or injuries caused by that property. The lien attaches simultaneously with the cause of action and adheres to the maritime property even through changes of ownership ... [and] even to a good faith purchaser." THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, § 9–1 (2d ed. 1994).

■ Gammill's claim arises under general maritime law, which is federal common law. It is not a claim under the Jones Act, 46 U.S.C.App. § 688, which creates an *in personam,* rather than *in rem,* claim for personal injuries. As Gammill's claim was brought under Rule 9(h) of the Federal Rules of Civil Procedure, the admiralty jurisdiction of this court under 28 U.S.C. § 1333 has been invoked and plaintiff is not entitled to a jury trial.

Prior to 1980, a personal injury claim brought *in rem* was not governed by any statute of limitation, rather was subject only to the equitable doctrine of laches. *Usher v. M/V OCEAN WAVE,* 27 F.3d 370, 371 (9th Cir.1994). Personal injury claims brought *in personam* were governed by the Jones Act and its three-year statute of limitations. In 1980 Congress adopted § 763a, which provides a uniform three-year period for all maritime claims.

Tolen relies on the district court's opinion in *Usher v. M/V OCEAN WAVE,* 835 F.Supp. 1220 (D.Or.1992), where the district court held that an *in rem* maritime claim was controlled by laches. Plaintiff counters that *Usher* was reversed on appeal. Indeed, the Ninth Circuit in *Usher* concluded that § 763a's three-year period applied to actions brought both *in personam* and *in rem.* 27 F.3d at 371–72.

However, Tolen appears to argue that laches may nevertheless apply to bar a claim prior to the running of the limitations period where the plaintiff has "unreasonably delayed" in bringing a claim which causes "prejudicial harm" to the owner.

At least one court has endorsed this view. In *Goodhue v. M/V ALABAMA MERCHANT,* No. C92–0214, 1994 WL 797679 (W.D.Ky.1994), a district court in this circuit relied on the district court's opinion in *Usher* as authority to find that laches applied to bar maritime tort claims. The court cited the *Usher* district court opinion for the proposition that the holder of an unrecorded lien must exercise a high degree of diligence in pursuing a claim when the vessel has passed into the hands of a bona fide purchaser without notice. The court noted that the district court in *Usher* had been reversed on appeal, but found that reversal to be "on other grounds."

The Ninth Circuit's opinion in *Usher* cannot be read so narrowly. The central holding of the case was that § 763a supplied the limitations period for maritime tort claims brought *in rem,* not the doctrine of laches. The Ninth Circuit therefore squarely rejected the district court's laches analysis as irrelevant. The Ninth Circuit had previously concluded that "Congress was concerned with eliminating the uncertainty caused by reliance upon the doctrine of laches to set the time limit for bringing a suit ..." *Friel v. Cessna Aircraft Co.,* 751 F.2d 1037, 1038 (9th Cir.1985) (citations omitted).

After a thorough review of the congressional debate surrounding the adoption of § 763a, the Ninth Circuit concluded that the congressional purpose in uniformity could only be served by a single limitations period, and thus "[i]t follows that the Ushers' personal injury claims are *not subject* to the doctrine of laches, but rather to the three-year limitations period established by Section 763a." 27 F.3d at 372 (emphasis added). To

proclaim the applicability of § 763a but protest that laches should nevertheless apply to bar claims prior to the running of the three-year period would thoroughly undermine congressional intent to provide a uniform period for all maritime claims.

### 3. Laches

While the court agrees with the Ninth Circuit that the legislative history of § 763a precludes the use of laches as a bar to recovery prior to the running of the statutory limitations period, the court additionally concludes that, assuming the doctrine were available, laches would not bar Gammill's claim.

Where a claim is brought *in rem* against a vessel owned by a bona fide purchaser for value without notice of the claim, the party bringing the claim must have exercised reasonable diligence in pursuing the claim. Laches can operate to bar such a claim where unreasonable delay in pursuing the claim results in prejudicial harm to the owner. *Stevens Technical Services, Inc. v. SS BROOKLYN*, 885 F.2d 584, 588 (9th Cir. 1989); *Cummins Financial, Inc. v. The Vessel ROSE OF ROCK RIVER*, 771 F.Supp. 234, 237 (N.D.Il.1991); *Burden v. Evansville Materials, Inc.*, 550 F.Supp. 41, 46–47 (W.D.Ky.1982).

In determining the diligence in bringing a claim, a court may consider (1) the lienholder's failure to file a claim or notice of lien, (2) the lienholder's delay in asserting the claim against the new owner, (3) whether the claim would be barred under the appropriate statute of limitations, and (4) prejudice to subsequent purchasers of the vessel. *John W. Stone Oil Distributor, Inc., v. M/V MISS BERN*, 663 F.Supp. 773, 779–80 (S.D.Ala.1987).

Under the first factor, Gammill did bring a claim against Merchants in June 1991, roughly a year and a half after his injury. However Gammill neither asserted a claim *in rem* nor filed a notice of lien against the vessel with the U.S. Coast Guard Documentation Office under 46 U.S.C. § 31343 (1994) until November 1992.

As an initial matter, the court notes the Third Circuit's statement in *Bermuda Express v. M/V LITSA*, 872 F.2d 554 (3d Cir.), *cert. dismissed*, 492 U.S. 939, 110 S.Ct. 31, 106 L.Ed.2d 640, *cert. denied*, 493 U.S. 819, 110 S.Ct. 73, 107 L.Ed.2d 40 (1989) is relevant here. That court declined to "establish a firm rule which would require a maritime lienor to arrest a vessel, particularly if there are available other reasonable methods, consistent with industry custom, to secure payment." *Id.* at 559. Here Gammill's choice was somewhat different: either to assert a lien against the vessel or file suit against the owner. The point is simply that where other reasonable means are available to pursue payment, it makes no sense to require a plaintiff to seek the most aggressive and debilitating method.

First, the purpose of such a filing is to afford notice to a subsequent purchaser. However, as the court in *Goodhue* noted, a maritime lien attaches immediately and need not be recorded to be enforceable. Maritime liens can be secret and may operate to the prejudice of purchasers without notice. 663 F.Supp. at 778 ("the purchaser of a vessel acquires imperfect title and maritime liens are regularly enforced against bona fide purchasers without notice"); *Piedmont and George's Creek Coal Company v. Seaboard Fisheries Company*, 254 U.S. 1, 12, 41 S.Ct. 1, 4, 65 L.Ed. 97 (1920).

This was true at the common law, and Congress saw fit not to change that rule in either the Jones Act or the Federal Maritime Liens Act. The *Goodhue* court nevertheless concluded that the failure to record a lien resulted in a lack of notice to a subsequent purchaser, and this constituted inexcusable neglect on the part of the plaintiff. Again, the court must respectfully disagree. Congress clearly contemplated that maritime liens would remain enforceable without a filing, and thus without record notice to subsequent purchasers. Where Congress has spoken by allowing unrecorded maritime liens to be enforceable, it would frustrate congressional intent for the courts to graft a substantive requirement of recordation onto maritime claims in the guise of equitable timing and notice considerations.

■ Under the second factor, any delay in asserting a maritime lien is only relevant upon a threshold determination that any delay was "unreasonable." Here, there is nothing in the record that suggests that plaintiff was aware that Merchants would be unable to satisfy a judgment in his Jones Act claim through liquid assets, insurance or other means. The *Bermuda Express* court noted the importance of "whether the lienor had information that the interests of a third party would likely be adversely affected by its failure to act." 872 F.2d at 559–60. Once it became apparent that Merchants' financial solvency was in question, Gammill wasted no time in asserting his lien against the BRADLEY T. Thus any delay was not unreasonable.

Tolen also bargained for and received an indemnification agreement with Merchants in the event any claims were made against the vessel. It is thus apparent that Tolen was aware that such submerged claims can and do surface long after they have apparently been put to sea. Even Tolen recognized that only limited reliance could be placed on Coast Guard records.

Under the third factor, this claim is not barred by the limitations period of § 763a. As for the fourth factor, Tolen as a subsequent purchaser would indeed be prejudiced by the absence of a recorded lien at the time of sale. But the court has already concluded Gammill's delay in bringing the claim was not unreasonable. And as noted above Tolen's indemnification agreement indicates only limited reliance on the recording mechanism. Thus Gammill's delay in utilizing that mechanism is less the *cause* of any prejudice to Tolen than the insolvency of Tolen's guarantor.

The court is not unmindful of the quandary faced by Tolen. Tolen purchased a vessel which had only one recorded lien against it, and received assurances from Merchants that no other liens existed. Tolen now faces the prospect of defending an action with which it has no familiarity, and the vessel it purchased may have to be sold to satisfy a $350,000 judgment if plaintiff is successful on the merits.

Tolen stresses that it will be hard-pressed to defend the action because essential evidence may be difficult or impossible to locate due to the five years that have passed since the accident. The loss of relevant evidence is indeed one of the concerns underlying limitation periods. The burden of proof of course remains with the plaintiff. The evidence put forward by the plaintiff will be available to the defendants, and normal discovery should afford the defendant an adequate opportunity to defend. While three years have passed between the accident and the filing of the complaint, this is less than the five-year statute of limitations period for personal injuries that do not arise in the maritime context. Further, Tolen's refusal either to post a bond in lieu of service on the vessel or inform the plaintiff of the vessel's location caused a significant delay in this litigation. To this extent Tolen's difficulty caused by any resulting delay is arguably self-inflicted.

■ It appears that, assuming Merchants is out of business or insolvent, the indemnity agreement may now be worthless. But the burden of such an event surely rests with Tolen rather than the plaintiff. Indeed, the "rigid scrutiny" of a secret lien is appropriate only where the subsequent purchaser "had no reasonable opportunity to discover it." *Norfolk Sand and Cement Co. v. Owen*, 115 F. 778 (4th Cir.1902). Tolen could have inquired not only about liens but whether there were any *lawsuits* pending against Merchants which could be brought against the vessel, and adjusted the purchase price accordingly. The availability of an action *in rem* against a vessel is a well-established part of maritime law with which Tolen should have been familiar.

4. Verified Complaint

Plaintiff's original complaint was verified as required by Rule C(2). The amended complaint, which was not verified, merely changed the name of the vessel to the BRADLEY T, and makes no new allegations which are unsworn. Plaintiff has now filed a new verified amended complaint, and thus Tolen's argument is moot.

## CONCLUSION

The plaintiff's personal injury claim is not subject to the doctrine of laches, but rather to the three-year limitations period under § 763a. To hold otherwise would thwart the congressional purpose of that section: to establish a uniform period in which to bring maritime personal injury claims and eliminate the laches defense. For the reasons noted above, even if laches were available that doctrine would not bar plaintiff's claim in this case.

## ORDER

The instant case is an *in rem* action by the plaintiff seeking to assert a maritime lien against the vessel on which he was injured. The claimant to the vessel, Tolen Marine, Inc. has moved to dismiss the complaint; and the Court being sufficiently advised,

IT IS ORDERED that said motion is DENIED.