Robert C. USHER and Kristi
K. Usher, Plaintiffs,

v.

M/V OCEAN WAVE, her engines, tackle, furnishings, etc., in rem, Defendants.

CV No. 91–1182–PA.

United States District Court,
D. Oregon.

June 3, 1992.

Charles Robinowitz, Portland, OR, for plaintiffs.

Kim Jefferies, Wood, Tatum, Wonacott & Landis, Portland, OR, for Owners.

## OPINION

PANNER, District Judge.

Plaintiffs Robert C. Usher (Usher) and Kristi K. Usher, husband and wife, bring this admiralty action in rem against defendant M/V OCEAN WAVE. Plaintiffs contend that Usher was injured while working as a longshoreman aboard defendant vessel.

I held a court trial April 2, 1992, to determine whether plaintiffs' claims are barred by laches. I received further evidence after the trial.

These are my findings of fact and conclusions of law. I conclude that plaintiffs' claims are barred by laches.

## FINDINGS OF FACT

On December 27, 1988, the M/V YUHOH, now known as the M/V OCEAN WAVE, was docked at Longview, Washington, taking on a cargo of logs. Usher was working as a longshoreman gang boss aboard the vessel. When he left the vessel for lunch, he fell from a metal plate at the end of the gangway, hurting his knees.

Chuck Warren, a superintendent for the Jones Oregon Stevedoring Co., wrote an accident report shortly after Usher's fall. The report states, "When Mr. Usher stepped on plate at bottom of gangway[,] it flipped up and [Usher] went on hands and knees on dock." Plaintiffs' Exh. 1. The report states that Usher injured both knees, but finished his shift, received no first aid, and was not sent to a doctor or a hospital.

The report states that it was "made" to the "S/C" and the "C/O." "S/C" refers to the "supercargo," who oversees loading and unloading the vessel's cargo. The supercargo was hired by the stevedore, not the vessel's owner, Nippo Commerce S.A. (Nippo).

"C/O" refers to the "chief officer," the vessel's chief mate. The chief officer is hired by the owner or charterer. There is no evidence other than the report itself to indicate that the chief officer received the report.

A copy of the report was given to Williams, Dimond & Co., the vessel's husbanding agent. Williams, Dimond was hired by Nakano Lines, the time charterer, not the owner. Randy Ford, operations assistant for Williams, Dimond, stated that Williams, Dimond did not communicate with the owner. Ford also stated that he did not talk to the vessel's chief officer about the accident.

Accident reports are filed for all injuries, even apparently trivial ones. A stubbed toe

or a bee sting would probably be reported and entered in the ship's log. Because most accident reports concern relatively minor injuries, accident reports rarely result in litigation. It is even rarer for an accident report to signal a potential lien against a vessel.

Ford testified that if Usher's accident report had indicated a serious injury, he would have notified the charterer, Nakano Lines, and the correspondent for the owner's protection and indemnity club, a Portland law firm. The absence of cover letters in the file indicated to Ford that he had not sent copies of the report to the owner, the time charterer, or the law firm.

Plaintiffs retained an attorney in early 1989. The attorney considered filing a third-party claim by late May 1989.

Meanwhile, the YUHOH sailed to several Pacific Northwest ports. It was at Anacortes, Washington from February 28 to March 3, 1989. It was at Longview, Washington from March 4 to 8 and April 24 to 27. It was at Tacoma from April 19 to 22, July 31 to August 3, and September 21 to 22. It was at Astoria, Oregon from June 12 to 19. It was at Wrangell, Alaska from August 5 to 8, and at Coos Bay, Oregon from September 23 to 28.

On August 11, 1989, Nippo sold the YUHOH to Ocean Wave Line, S.A., which renamed the vessel SILVER ARROW. Nippo now has no assets. On October 25, 1989, Ocean Wave Line sold the vessel to Twin Leaf, S.A., the vessel's current owner. Twin Leaf gave the vessel its current name, OCEAN WAVE.

Hiromichi Sato, secretary of Twin Leaf, stated that Twin Leaf was not involved in Nippo's sale of the vessel to Ocean Wave. Twin Leaf relied on Ocean Wave's warranties that the vessel was free and clear of any liens. Sato stated that buyers customarily rely on such warranties. When Twin Leaf purchased the vessel, it had no knowledge of a lien against the vessel arising from Usher's personal injury. In 1990 or January 1991, plaintiffs' attorney learned that the vessel had been sold.

On October 23, 1990, Usher received surgery on his right hip, the first of three surgeries that he claims were caused by the December 1988 accident. Plaintiffs had the vessel arrested on November 12, 1991. Twin Leaf first learned of plaintiffs' claims on that day.

## CONCLUSIONS OF LAW

■ Laches bars a claim when the plaintiff has inexcusably delayed bringing the claim and the delay prejudices the defendant. *Stevens Technical Servs. v. SS Brooklyn,* 885 F.2d 584, 588 (9th Cir.1989). The holder of an unrecorded lien against a bona fide purchaser of a vessel must exercise "a high degree of diligence" when pursuing an in rem claim. *Tagaropulos, S.A. v. S.S. Santa Paula,* 502 F.2d 1171, 1172 (9th Cir.1974) (citing *Merchants & Marine Bank v. The Fishing Vessel T.E. Welles,* 289 F.2d 188, 190 (5th Cir.1961)); *cf. Bermuda Express, N.V. v. M/V Litsa,* 872 F.2d 554, 558 (3d Cir.) (requiring "reasonable diligence"), *cert. dismissed,* 492 U.S. 939, 110 S.Ct. 31, 106 L.Ed.2d 640, *cert. denied,* 493 U.S. 819, 110 S.Ct. 73, 107 L.Ed.2d 40 (1989). The court may consider the lien holder's failure to file claims in the ship's home port, failure to arrest the ship when possible, and delay in asserting the claim against the new owner. *Id.* (citing *Waterways Marine, Inc. v. Brooks Liquid Transport, Inc.,* 291 F.Supp. 703 (N.D.Ill.1968)).

■ In determining whether laches applies, the court may look to an analogous statute of limitations. *Jones v. Reagan,* 748 F.2d 1331, 1335 (9th Cir.1984), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 636 (1985). Here, the most analogous statute, the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.App. § 763a, has a three-year limit.

### I. Plaintiffs' Delay

■ Usher was injured on December 27, 1988. Plaintiffs arrested the vessel on November 12, 1991. Although plaintiffs filed their claim within three years of the accident, the period set by the most analogous statute of limitation, that does not resolve the laches issue. Plaintiffs still must exercise a high

degree of diligence. *Tagaropulos*, 502 F.2d at 1172.

■ Plaintiffs failed to exercise sufficient diligence. They retained an attorney early in 1989, and by May 1989, the attorney was considering a third-party claim. Between May and August 1989, plaintiffs could have had the vessel arrested at several ports in the Pacific Northwest. By January 1991 at the very latest, plaintiffs' attorney knew that the vessel had been sold, yet he did not assert a claim until November 1991. Plaintiffs have not explained why they delayed two and a half years after they first considered legal action.

Plaintiffs may argue that the only delay that matters was between May 1989, when they considered filing a claim, and August 1989, when Nippo sold the vessel to Ocean Wave. However, in considering whether the delay was excusable, I have considered the further delay between August 1989 and November 1991.

## II. Prejudice to Defendant

Even though plaintiffs did not exercise sufficient diligence, laches would not apply unless their delay prejudiced defendant. Here, the delay did prejudice defendant.

■ The current owner had no actual notice of the lien. However, plaintiffs contend that the accident report filed the day of the injury was adequate notice. Defendant argues that notice to Williams, Dimond, the ship's husbanding agent, was not notice to Nippo, the vessel's owner, because Williams, Dimond was not a general agent for Nippo. I agree. *See Cobelfret–Cie Belge v. Samick Lines Co.*, 542 F.Supp. 29, 31 (W.D.Wa.1982) (Beeks, J.) (following decisions holding that "husbanding agents are not authorized to accept service of process which will bind the vessel's owner"). Although *Cobelfret–Cie* is not directly on point, its reasoning is persuasive. The husbanding agent's acceptance of the accident report here was not notice to the vessel's owner.

■ Plaintiffs also contend that defendant had notice of the claim because the accident report was given to the chief officer. Notice to the chief officer could be notice to Nippo.

*See Espino v. Ocean Cargo Line, Ltd.*, 382 F.2d 67, 69 (9th Cir.1967). However, in *Espino*, the officers and crew members knew that the plaintiff had been seriously injured, putting the vessel owner on notice of potential liability. Here, the accident report did not indicate a serious injury or an intent to pursue a claim, so it could not have put Nippo or the subsequent owners on notice of a potential lien against the vessel.

■ Defendant was prejudiced by the delay because Nippo, the original owner, has no assets. The vessel's current owner cannot seek indemnity against Nippo even though the owner was a bona fide purchaser with no notice of the lien.

■ Plaintiffs argue that defendant was not prejudiced because the vessel's owner may seek indemnity from Ocean Wave. When Ocean Wave sold the vessel to the current owner, it promised that the vessel was free and clear of any liens. The agreement allows the current owner to arbitrate disputes with Ocean Wave. However, I find this remedy too speculative to cure the prejudice to defendant.

## CONCLUSION

Plaintiffs' claims are barred by laches. This action is dismissed.