993 F.2d 414
 1993 A.M.C. 2439
 UNIVERSAL LEAF TOBACCO COMPANY, INCORPORATED; Eastern Leaf
Tobacco Company, Plaintiffs-Appellees,
v.
COMPANHIA DE NAVEGACAO MARITIMA NETUMAR, in personam; M/V
OLIVIA, her engines, tackle, apparel, etc., in
rem, Defendants-Appellants.
UNIVERSAL LEAF TOBACCO COMPANY, INCORPORATED; Eastern Leaf
Tobacco Company, Plaintiffs-Appellants,
v.
COMPANHIA DE NAVEGACAO MARITIMA NETUMAR, in personam; M/V
OLIVIA, her engines, tackle, apparel, etc., in
rem, Defendants-Appellees.
 Nos. 92-1429, 92-1437.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 3, 1993.
Decided May 18, 1993.
 
 John R. Crumpler, Kaufman & Canoles, P.C., Norfolk, VA, argued, for appellant.
 Waverly Lee Berkley, III, argued (R. Arthur Jett, Jr., on brief), Jett, Berkley, Furr & Padgett, Norfolk, VA, for appellees.
 Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 K.K. HALL, Circuit Judge:
 
 
 1
 Companhia De Navegacao Maritima Netumar ("Netumar") appeals a judgment entered against it for damages occurring during a maritime shipment of goods for Universal Leaf Tobacco Company, Inc. ("Universal"). Universal cross-appeals the ruling that Netumar was entitled to invoke the statutory limitation-of-liability provision. We affirm.
 
 I.
 
 2
 Universal contracted with Netumar, a Brazilian common carrier, for the shipment of a large cargo of tobacco from Brazil to Norfolk, Virginia. Universal packed its tobacco into 2 X 2 X 4 fiberglass cases. Universal then "stuffed and loaded" these smaller cases into large metal containers provided by Netumar, and these containers were then sealed by Brazilian Customs. Each 40-foot long container held 90-99 cases of tobacco. After sealing, Universal delivered the containers to Netumar for loading in the hold of the M/V OLIVIA. All told, the shipment comprised about 1200 cases of tobacco stuffed into 12 containers.
 
 
 3
 The parties' contract is evidenced by a bill of lading issued by Netumar on its own forms and completed by Universal's shipping agent. There were eight separate forms in all. Some cover a single large container of 90-99 cases and others cover multiple containers. In each, under the heading "NO. of PKGS.", the number of the large containers was typed in by Universal's agent, e.g., "-02-," but under the form heading "Particulars furnished by shipper/description of packages and goods," the total number of cases covered by that particular bill of lading is given, e.g., "Containers 40 ft. S.T.C. [said to contain]: 180 cases with [tobacco]." Further in the same section, Universal's agent typed in the identification numbers of each large container, followed by the number of cases in each, e.g., "QTY/CASES-90." Though there was a space for it, no "declared cargo value" was listed by Universal. Under this "declared value" section is the following: "If merchant enters a value, carrier's limitation of liability shall not apply and the ad valorem rate will be charged. See clause 23." Clause 23 is found on the reverse side of the form in small type:
 
 
 4
 LIMITATION OF LIABILITY. In case of any loss or damage to or in connection with cargo exceeding in actual value the equivalent of $500 lawful money of the United States, per package, or in case of cargo not shipped in packages, per shipping unit, the value of the cargo shall be deemed to be $500 per package or per shipping unit. The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in cases of partial loss or damage, unless the nature of the cargo and a valuation higher than $500 per package or per shipping unit shall have been declared by the Merchant before shipment and inserted in this Bill of Lading, and extra freight paid if required. In such case, if the actual value of the cargo per package or per shipping unit shall exceed such declared value, the value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value.
 
 
 5
 * * * * * *
 
 
 6
 Where a Container is not stuffed by the Carrier, each individual such Container, including in each instance its contents, shall be deemed a single package and Carrier's liability limited to $500 with respect to each such package.
 
 
 7
 * * * * * *
 
 
 8
 On the first leg of the trip between Rio Grande and Rio de Janeiro, water got into the hold with the tobacco containers. Universal was not notified until the ship reached Norfolk 17 days later. Universal first had to pay the full freight charge before being allowed to conduct a survey of the damage. It was determined that six containers (568 cases) were a total loss and that tobacco in five other containers was partially damaged. The total damage was in the range of $600,000-700,000. U.S. Customs ordered Universal to properly dispose of the ruined goods.
 
 
 9
 Universal then brought this action in admiralty. Netumar admitted liability. However, on the issue of damages, Netumar contended that the large containers are the freight unit to which the statutory $500 per package limit on carrier liability should apply. See 46 U.S.C.App. § 1304(5) (Carriage of Goods by Sea Act, or COGSA). Universal countered by claiming that Netumar was not entitled to invoke this statutory limitation because the carrier's failure to timely notify Universal of the damage, while there existed the possibility of salvaging much of the cargo, constituted an "unreasonable deviation" from accepted shipping practices. Universal also argued that if COGSA's limitation applied, the applicable units were the individual cases of tobacco and not the larger containers.
 
 
 10
 A bench trial was held before a magistrate judge. On the threshold issue of the applicability of the COGSA limitation, the court held that Netumar was negligent in failing to promptly notify Universal of the water damage, but that this negligence did not amount to the sort of "unreasonable deviation" from the shipping contract as would deprive the carrier of the protection of the $500 per package limitation.
 
 
 11
 The next issue was to which units of freight, the 2 X 2 X 4 cases or the 40 fiberglass containers, the $500 limitation should apply. The magistrate judge adopted a bright-line test developed in another circuit--if the face of the bill of lading discloses the number of packages inside a container, then these packages should normally be considered the COGSA units. The court awarded damages of $391,000.09 to Universal, broken down as follows:
 
 
 12
 --568 cases totally lost, each worth more than $500 ($284,000)
 
 
 13
 --173 cases partially destroyed, at an average value of $130.63 per case ($22,598.99)
 
 
 14
 --129 cases of stems, each totally lost but worth only $145.50/case ($18,769.50)
 
 
 15
 --freight charged and collected by Netumar ($45,097.50)
 
 
 16
 --dumping costs ($16,566.00)
 
 
 17
 --survey costs ($4,574.10)
 
 
 18
 The magistrate judge also awarded pre-judgment interest to Universal.
 
 
 19
 Netumar appeals that portion of the judgment that awarded damages based on the application of the COGSA limitation to each case rather than each container. Universal cross-appeals the court's ruling that Netumar's negligence did not rise to the level of an "unreasonable deviation" such as would nullify the COGSA defense.
 
 II.
 
 20
 The COGSA provision at issue (46 U.S.C.App. § 1304(5)) provides:
 
 
 21
 Amount of Liability; valuation of cargo--(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.
 
 
 22
 By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, that such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.
 
 
 23
 Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading.
 
 
 24
 No value was declared by Universal, so the task is to determine what the (undefined) term "package" applies to. Netumar's argument is that the boilerplate language on the back of the contract clearly provides that the large containers would be deemed the "packages" for COGSA purposes:
 
 
 25
 Where a Container is not stuffed by the Carrier, each individual such Container, including in each instance its contents, shall be deemed a single package and Carrier's liability limited to $500.00 with respect to each such package.
 
 
 26
 Universal, on the other hand, points to the front of the bill of lading, which clearly discloses how many cases were inside each large container, e.g. "Containers [said to contain] 180 cases of [tobacco]," and "QTY/CASES-90." In affirming the judgment, we adopt the rule established by the Second Circuit in Monica Textile Corp. v. S.S. Tana, 952 F.2d 636 (2d Cir.1991).
 
 A.
 
 27
 Monica contains a lengthy discussion of the history of COGSA and the post-enactment introduction of large containers into the shipping trade. In 1971, the Second Circuit held that these new large containers were not the type of unit to which COGSA's limitation of liability was intended to apply:
 
 
 28
 [W]e cannot escape the belief that the purpose of § 4(5) of COGSA was to set a reasonable figure below which the carrier should not be permitted to limit his liability and that "package" is thus more sensibly related to the unit in which the shipper packed the goods and described them than to a large metal object, functionally a part of the ship, in which the carrier caused them to be "contained."
 
 
 29
 Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 815 (2d Cir.1971) (footnote omitted). Although adherence to this "container rule" waned somewhat in later years, it was reaffirmed in Mitsui & Co. v. American Export Lines, Inc., 636 F.2d 807 (2d Cir.1981):
 
 
 30
 Mitsui held that when a bill of lading discloses on its face what is inside the container, and those contents may reasonably be considered COGSA packages, then the container is not the COGSA package.
 
 
 31
 Monica, 952 F.2d at 639.
 
 
 32
 In Monica, the bill of lading provided that a COGSA package was "each container where the container is stuffed by the Merchant or on his behalf...." Id. at 641. The appeals court, noting that "such agreements run against the grain of COGSA," id., concluded that such a clause was "unbargained-for boilerplate" that would not be used to determine the COGSA package in the face of other evidence describing the contents of the containers. Id. at 643. That other evidence in Monica was found on the face of the bill of lading, wherein it was disclosed that 76 bales of cloth were stowed in the container. "[W]hen a bill of lading refers to both containers and other units susceptible of being COGSA packages, it is inherently ambiguous." Id. at 642. This ambiguity should be resolved against the carrier unless the parties have clearly and explicitly agreed to treat the container as the COGSA package.
 
 B.
 
 33
 Each of the eight bills of lading completed by Universal contained the overall number of cases covered by that particular contract as well as (in multiple-container bills of lading) the number of cases in each container. Under the Mitsui- Monica rule, this specific reference to the quantity of cases trumps the more general "no. of pkgs." designation (which was also filled in by Universal's agent) and the boilerplate language, in small type, in paragraph 23 on the reverse of the bill. To overtrump, the parties would have had to agree to define the large container as a "package" for COGSA purposes "in terms that are explicit and unequivocal." Id. at 642. The boilerplate language is not nearly explicit enough.[1]
 
 
 34
 For the reasons given by the magistrate judge, we reject Netumar's argument for a pro rata reduction of the non-freight damages.[2] We also decline Universal's invitation to extend the "unreasonable deviation" doctrine beyond its current boundaries.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 In adopting the Second Circuit's rule in its entirety, we are influenced in no small part by a desire to fashion a uniform body of law in this area
 
 
 [2]
 Netumar concedes that the freight damage portion of the award ($325,368.49) is correct if it is determined that the cases are the unit to which the COGSA limitation should apply