7 F.3d 1427
 1994 A.M.C. 365
 ALL PACIFIC TRADING, INC., a corporation, Plaintiff,
and
Tokio Fire & Marine Ins. Co., Ltd.; Fireman's Fund
Insurance Co.; International Cargo & Surety Insurance
Company; Malayan Overseas Insurance Corporation; Shin Kong
Fire & Marine Insurance Co., Ltd.; Compass International,
Janka, Ltd.; Rockwell International Corp.; USA Maxam,
Inc.; A.O.K. International, Inc.; Newell Company; VSI
Hardware Industries; Scitech Medical Products, Inc.;
American Trading & Production Corporation, Plaintiffs-Appellees,
v.
VESSEL M/V HANJIN YOSU; Crystal Shipping Line, Defendants,
Hanjin Container Line, Inc.; Korea Shipping Corporation,
Defendants-Appellants.
 No. 92-55550.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 2, 1993.
Decided Oct. 22, 1993.
 
 David E.R. Woolley, Williams Woolley Cogswell Nakazawa & Russell, Long Beach, CA, for defendant-appellant.
 Joseph P. Tabrisky & Michael W. Lodwick, Fisher & Porter, Long Beach, CA, for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: BROWNING, FARRIS and KELLY,* Circuit Judges.
 PAUL KELLY, Jr., Circuit Judge:
 
 
 1
 M/V Hanjin Yosu (formerly the Korea Wonis One), a vessel under Korean flag, and its owner, the Hanjin Container Line, Inc. (formerly the Korea Shipping Corp. and hereinafter referred to as Hanjin, Inc.), seek to appeal the district court's judgment in favor of numerous Plaintiffs in an admiralty action.[1] The Plaintiffs are the owners of goods, or their subrogated insurers, damaged during carriage on the Hanjin Yosu. Consolidating their arguments, Defendants appeal on two grounds: (1) Plaintiffs did not have any relationship with Defendants sufficient to create a cause of action against Defendants, because Plaintiffs transferred the goods to intermediary non-vessel operating common carriers, who then transferred the goods to Defendants; and (2) even if Defendants are liable, the district court did not correctly apply the statutory liability limitation of $500 per package or customary freight unit. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.
 
 Background
 
 2
 The nine Plaintiffs are the owners or subrogated insurers of various goods transported on the Hanjin Yosu in April 1988. Eight of these shippers did not deliver their goods directly to the Hanjin Yosu.[2] Rather, they delivered the goods to several different non-vessel-operating common carriers (NVOCCs), who issued bills of lading to the shippers. The NVOCCs then delivered the goods to the Hanjin Yosu, which issued entirely separate non-negotiable bills of lading to the NVOCCs (the "Hanjin bills of lading"). Some of the transactions involved several NVOCCs transferring the cargo to each other in succession before delivering the cargo to the vessel.
 
 
 3
 An NVOCC is an intermediary between the shipper of goods and the operator of the vessel that will carry the goods. Generally, an NVOCC combines the goods of various shippers into a single shipment, contracts with a vessel for the transportation of the goods, and delivers the goods to the vessel, usually in a sealed container. See NLRB v. International Longshoremen's Ass'n, 447 U.S. 490, 496 n. 8, 100 S.Ct. 2305, 2309 n. 8, 65 L.Ed.2d 289 (1980). NVOCCs perform a function similar to overland freight forwarders, consolidating small shipments from multiple shippers into large, standard-sized reusable containers that can be quickly loaded on and off ships and onto trucks or other types of transportation. See National Customs Brokers & Forwarders Ass'n v. United States, 883 F.2d 93, 101 (D.C.Cir.1989).
 
 
 4
 As defined by statute, an NVOCC is a "common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier." 46 U.S.C.App. § 1702(17). Conversely, an NVOCC is considered a carrier in its relationship with the shipper of the goods. National Customs Brokers, 883 F.2d at 101.
 
 
 5
 The original shipper of the cargo receives a bill of lading from the NVOCC upon delivery of the cargo to the NVOCC. The NVOCC receives an entirely separate bill of lading from the actual carrier, on which the owner of the cargo may or may not be named. In this case, the cargo owners were not named on the Hanjin bills of lading.
 
 
 6
 Once loaded on board the Hanjin Yosu, the cargo suffered $466,617 in water damage (before interest and costs) while the vessel was docked in Pusan, Korea. The damaged cargo included goods from several different shippers and NVOCCs, for which nine different bills of lading were given by the Hanjin Yosu. The Hanjin bills of lading were identical in all material respects. In the district court, the parties stipulated to the amount of damages, ownership of the cargo, and the cause of the damage. On appeal, Defendants concede the unseaworthiness of the Hanjin Yosu and their lack of due diligence to maintain the seaworthiness of the vessel.
 
 Discussion
 
 7
 The case comes before the court on stipulated facts, and involves only questions of law, which we review de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Plaintiffs presented two claims to recover the damages to their goods: an in rem action against the vessel and an in personam action against the shipowner. Defendants responded that Plaintiffs lacked a relationship with Hanjin, Inc. sufficient to support an in personam claim, and that there was no in rem jurisdiction over the Hanjin Yosu.
 
 
 8
 I. Appellate Jurisdiction Over The M/V Hanjin Yosu
 
 
 9
 After the case had been submitted, we raised the issue of whether the notice of appeal conferred jurisdiction over the vessel Hanjin Yosu. The district court's judgment specifies that liability is in personam against Defendant Hanjin, Inc. and in rem against Defendant Hanjin Yosu, except as to the claims of three plaintiffs in which liability is only against Defendant Hanjin, Inc. in personam. The notice of appeal does not specify that the vessel is appealing:
 
 
 10
 COMES NOW Hanjin Container Lines, Ltd. and Korea Shipping Corporation and appeal from the judgment for $466,617.97 principal and $140,575.65 interest in favor of plaintiffs on March 23, 1992....
 
 
 11
 Fed.R.App.P. 3(c) requires that "[t]he notice of appeal shall specify the party or parties taking the appeal." In Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that the failure to name a party taking an appeal was jurisdictional. Id. at 314, 108 S.Ct. at 2407. The purpose of a specific designation is to provide notice to the court and to the opposing parties as to the identity of the appellant or appellants. Id. at 318, 108 S.Ct. at 2409. This enables appellees and the court to determine whether "a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions." Id.
 
 
 12
 Although the vessel's name appears in the caption of the notice of appeal along with other Defendants, the caption cannot be read as a designation of the vessel when the text of the notice of appeal designates specific Defendants as appellants and does not include the Defendant vessel. See National Ctr. for Immigrants' Rights v. INS, 892 F.2d 814, 816-17 (9th Cir.1989) (recognizing that it is possible to describe fewer than the entire group of potential appellants); Allen Archery, Inc. v. Precision Shooting Equipment, Inc., 857 F.2d 1176, 1177 (7th Cir.1988). See also United States v. Tucson Mechanical Contracting, Inc., 921 F.2d 911, 913-914 (9th Cir.1990). Defendant Hanjin, Inc. argues that it is appealing in two capacities--as defendant and as a claimant of the vessel, and it was unnecessary to designate either capacity in the notice of appeal. Defendant asserts that "[t]he only basis on which this Court could invoke Torres for the proposition that Hanjin Yosu had to be named in the appeal is if it determines that the vessel had an independent legal existence and a separate set of liabilities."
 
 
 13
 We are reluctant to collapse the distinction between the vessel and its owner in these circumstances. Generally, a vessel is viewed as a juristic person, responsible in rem for the acts and omissions of her personnel, separate and distinct from her owner. Canadian Aviator, Ltd. v. United States, 324 U.S. 215, 224, 65 S.Ct. 639, 644, 89 L.Ed. 901 (1945); The Barnstable, 181 U.S. 464, 467, 21 S.Ct. 684, 685, 45 L.Ed. 954 (1901). Although the legal fiction of vessel apart from owner has not been applied when it would frustrate Congressional purpose limiting liability, see Consumers Import Co. v. Kabushiki Kaisha, 320 U.S. 249, 252-53, 64 S.Ct. 15, 16-17, 88 L.Ed. 30 (1943); Place v. Norwich & N.Y. Transp. Co., 118 U.S. 468, 502-04, 6 S.Ct. 1150, 1161-63, 30 L.Ed. 134 (1886), or providing a convenient forum, Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 23-25, 80 S.Ct. 1470, 1473-74, 4 L.Ed.2d 1540 (1960), plaintiffs often sue owners in personam and vessels in rem, see Exxon Corp. v. Central Gulf Lines, Inc., --- U.S. ----, ----, 111 S.Ct. 2071, 2073, 114 L.Ed.2d 649 (1991), urging different legal theories and remedies. See, e.g., Melwire Trading Co. v. M/V Cape Antibes, 811 F.2d 1271, 1273 (9th Cir.), amended on other grounds, 830 F.2d 1083 (1987); Churchill v. F/V FJORD, 892 F.2d 763, 767-772 (9th Cir.1988) (affirming dismissal of in rem action, but reversing comparative fault allocation against in personam defendants), cert. denied, 497 U.S. 1025, 110 S.Ct. 3273, 111 L.Ed.2d 783 (1990). In this case, the district court appears to have made the distinction both in its reasoning and judgment. On appeal, we are required to examine both.
 
 
 14
 In rem maritime actions are available " 'only in connection with a maritime lien.' " Hunley v. Ace Maritime Corp., 927 F.2d 493, 496 (9th Cir.1991) (quoting Melwire Trading Co., 811 F.2d at 1273). Congress revised and recodified the laws regarding maritime liens in 1988. See 46 U.S.C. §§ 31301-31343. These revisions recognize the continued existence of maritime liens "for damage arising out of a maritime tort." 46 U.S.C. § 31301(5)(B). The owner of a vessel is an interested party, but not a necessary one. Merchants Nat'l Bank v. Dredge Gen. G.L. Gillespie, 663 F.2d 1338, 1346 (5th Cir.1981), cert. dismissed, 456 U.S. 966, 102 S.Ct. 2263, 72 L.Ed.2d 865 (1982). "Claims not creating a maritime lien must be pursued in personam." Melwire Trading Co., 811 F.2d at 1273 (citation omitted). Although Hanjin, Inc. reminds us that it is the claimant of the vessel and that it has coterminous liability with the vessel, it is not identical to the vessel and we decline to hold that a claimant and the vessel are one in the same for purposes of naming the proper parties to an appeal. It is too late in this lawsuit to claim that the vessel was not before the court as a party and did not need to file a proper notice of appeal.
 
 
 15
 II. Plaintiffs' In Personam Claim Against The Shipowner
 
 
 16
 Defendant Hanjin, Inc. claims that Plaintiffs lack any relationship with it sufficient to support an in personam claim, arguing that Plaintiffs were neither parties to, nor transferees of, the non-negotiable Hanjin bills of lading.
 
 
 17
 Bills of lading are contracts of adhesion, usually drafted by the carrier, and are therefore " 'strictly construed against the carrier.' " C-Art, Ltd. v. Hong Kong Islands Line America, S.A., 940 F.2d 530, 532 (9th Cir.1991) (quoting Interocean S.S. Corp. v. New Orleans Cold Storage and Warehouse Co., 865 F.2d 699, 703 (5th Cir.1989)), cert. denied, --- U.S. ----, 112 S.Ct. 1762, 118 L.Ed.2d 425 (1992). "[A]ny ambiguity in the bill of lading must be construed in favor of the shipper and against the carrier, ...." Institute of London Underwriters v. Sea-Land Serv., Inc., 881 F.2d 761, 767 (9th Cir.1989); cf. Pan Am. World Airways, Inc. v. California Stevedore & Ballast Co., 559 F.2d 1173, 1177 (9th Cir.1977).
 
 
 18
 Plaintiffs argue, and the district court concluded, that they are actual parties to the bills of lading under the definition of "Merchant" in the bills of lading. The relevant provision of the bills of lading states:
 
 
 19
 'Merchant' includes the shipper, consignor, consignee, owner and receiver of the Goods and the Holder of this Bill of Lading.
 
 
 20
 The Hanjin bills of lading do not name any individual parties as the Merchant. The bills of lading include blanks for the names of the shipper, the exporter, the consignee, the "notify parties," the forwarding agent references, and the vessel, but no blank for either the Merchant or for the owner of the goods. Thus, the only definition of Merchant included on the bills of lading is the contract definition quoted above. The failure to specifically identify a particular party as Merchant is particularly noteworthy given the fact that the bill of lading goes on to use the term Merchant approximately seventy-seven times.
 
 
 21
 Defendant claims that the definition of Merchant merely describes the various parties who could be Merchants. If the face of the bills of lading had named a particular party or parties as Merchants, we would find this argument persuasive. But because the bills of lading do not name any particular parties as Merchants, we must rely on the contract definition of Merchant on the reverse of the bills of lading.
 
 
 22
 Careful examination of the fine print of the bills of lading lends further support to the conclusion that the cargo owners were within the contract definition of Merchant. The only other provision in the bills of lading that mentions specifically the cargo owner provides:
 
 
 23
 27. (Freight and Charges) ...
 
 
 24
 (4) The shipper, consignee, owner of the Goods and holder of this Bill of Lading shall be jointly and severally liable to the Carrier for the payment of all freight, charges and other amounts due the Carrier and for any failure of either or both to perform his or their obligations under the terms of this Bill of Lading and they shall indemnify the Carrier against and hold it harmless from all liability, loss, damages and expense which the Carrier may sustain or incur arising or resulting from any such failure of performance by the Merchant or either of them.
 
 
 25
 This provision unambiguously provides that the cargo owner has obligations under the bills of lading. The provision anticipates that the various parties defined as Merchants would be jointly and severally liable for freight charges. By defining Merchant broadly, the bills of lading attempt to create a broad range of parties from whom the carrier can seek payment for the shipment.
 
 
 26
 Reading the entirety of the Hanjin bills of lading demonstrates the owners of the goods are parties to the bills of lading as Merchants and therefore have an in personam claim against Hanjin, Inc. Even were we to view the definition of Merchant as an ambiguous contract term, we would construe this ambiguity against the carrier under the rules of construction applicable to bills of lading.
 
 
 27
 Defendant next argues that, even if Plaintiffs are considered Merchants, Plaintiffs never took any action demonstrating acceptance of the bills of lading, as is required to become bound by their terms. See Aplt. Brief at 30-32. Although the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. §§ 1300-1315, does not contain any statutory requirement for acceptance, Hanjin, Inc. notes correctly that, like all contracts, the bills of lading require some form of acceptance. See e.g., Cal.Civ.Code § 2176 (acceptance of a domestic bill of lading constitutes assent to its terms under Article 7 of UCC). At the very least, Plaintiffs' initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading. See 17A Am.Jur.2d Contracts § 456 (as a basic rule of contract interpretation, a party may accept a contract by filing suit on the contract).
 
 
 28
 III. Plaintiffs' In Rem Claim Against The Vessel
 
 
 29
 The Hanjin Yosu disputes the validity of the in rem cause of action against it. Because the vessel is not a party appellant, we decline to address this point other than to restate our previous holding--the plain language of the Hanjin bills of lading establish that these cargo owners were Merchants under the bills of lading and therefore had a direct contractual relationship with the operators of the Hanjin Yosu. When a cargo owner has a direct contractual relationship with the operator of a vessel, the cargo owner has a lien on the vessel for any injury caused by the operator's lack of due diligence. See Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U.S. 490, 499, 43 S.Ct. 172, 174, 67 L.Ed. 364 (1923); The Keokuk, 76 U.S. (9 Wall.) 517, 519, 19 L.Ed. 744 (1869).
 
 
 30
 IV. The Limitation Of Liability Of $500 Per Package Or
 
 Customary Freight Unit
 
 31
 Defendant challenges the district court's application of the statutory limitation of liability. COGSA limits the liability of carriers for cargo damaged while in transit to the United States:
 
 
 32
 Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ..., or in case of goods not shipped in packages, per customary freight unit, ....
 
 
 33
 COGSA § 4(5), codified at 46 U.S.C.App. § 1304(5). The $500 limitation is not absolute, since shippers must be given the opportunity to declare a higher value of their shipments, and create a higher limitation of liability. Komatsu, Ltd. v. States Steamship Co., 674 F.2d 806, 808-09 (9th Cir.1982). Defining "package" under § 4(5) is a question of statutory construction, reviewed de novo. Van Der Salm Bulb Farms, Inc. v. Hapag Lloyd, AG, 818 F.2d 699, 701 (9th Cir.1987).
 
 
 34
 Defendant's argument centers around the fact that an NVOCC generally does not deliver any packages to the vessel, but instead delivers a sealed container to the vessel. According to the Defendant, that container should be considered the package or customary freight unit to which the $500 limitation applies. Defendant places great weight on the fact that its rate agreements with the NVOCC are determined by the number of containers, not by the number of packages within the containers.
 
 
 35
 However, the plain language of the bills of lading indicate that the carrier understood that it was shipping packages, and not containers. Under "NO. OF PKGS. OR CONTAINERS," the Hanjin bills of lading list the number of packages within each container delivered to the Hanjin Yosu. By listing the number of packages and containers, the shipper availed itself of the opportunity to clarify the liability limits. See Universal Leaf Tobacco Co. v. Companhia De Navegacao Maritima Netumar, 993 F.2d 414, 416-17 (4th Cir.1993) (courts will not consider a container to be a COGSA package if bill of lading discloses number of packages within container); Monica Textile Corp. v. S.S. Tana, 952 F.2d 636, 639-43 (2nd Cir.1991).
 
 
 36
 We also reject the carrier's argument that the Hanjin bills of lading define package for the purpose of the limitation of liability. The Hanjin bills of lading provide:
 
 29. Limitation of Liability
 
 37
 (2) ... (ii) where the cargo has been either packed into container(s) or utilized into similar article(s) of transport by or on the behalf of the Merchant, it is expressly agreed that the number of such container(s) or similar article(s) of transport shown on the face hereof shall be considered the number of the package(s) or unit(s) for the purpose of the application of the limitation of liability provided for herein.
 
 
 38
 COGSA § 3(8) provides that any contract agreement lessening the statutory liability of the carrier is null and void. 46 U.S.C.App. § 1303(8) The contract definition of package is neither reasonable nor consistent with the language and purpose of the statute. Listing the number of packages within each container determined the number of packages for the purpose of the limitation of liability when the NVOCCs delivered these sealed containers to the carrier. See Universal Leaf Tobacco, 993 F.2d at 416-17 (rejecting similar contract provision); Shinko Boeki Co. v. S.S. "Pioneer Moon", 507 F.2d 342, 344-45 (2d Cir.1974) (rejecting contract definition of "packages" as applied to bulk shipment of liquid latex); Matsushita Electric Corp. v. S.S. Aegis Spirit, 414 F.Supp. 894, 905 (W.D.Wash.1976) ("If carriers alone, or even carriers and shippers together, are allowed to christen something a 'package' which distorts or belies the plain meaning of this word ..., then the liability floor becomes illusory and negotiable"); Cia. Panamena de Seguros, S.A. v. Prudential Lines, Inc., 416 F.Supp. 641, 643 (D.C.Z.1976) (rejecting contract definition of container as package).
 
 
 39
 V. The Failure Of The District Court To Make Written
 
 Findings Of Fact And Conclusions Of Law
 
 40
 Defendant claims that the district court failed to make findings of fact and conclusions of law as required by Fed.R.Civ.P. 52. Defendant first raises this issue as a grounds for appeal in its reply brief, although mention is made of it in the recitation of facts contained in the opening brief. Failure to raise the issue in the opening brief waived that issue on appeal. See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429, 436 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993).
 
 
 41
 AFFIRMED.
 
 
 
 *
 The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the United States Court of Appeals-Tenth Circuit, sitting by designation
 
 
 [1]
 This dispute was previously before this court on the issue of the applicability of American admiralty law. See In re Korea Shipping Corp., 919 F.2d 601 (9th Cir.1990)
 
 
 [2]
 At oral argument, Defendants conceded that one of the shippers, American Trading dealt directly with Hanjin, Inc. Defendants therefore do not dispute the issue of liability towards that Plaintiff