Maximo HILAO, Class Plaintiffs, Plaintiff–Appellee,

v.

ESTATE OF Ferdinand MARCOS, Defendant,

and

Imelda R. Marcos;  Ferdinand R. Marcos, Representatives of the Estate of Ferdinand Marcos, Defendants–Appellants.

Nos. 95–16487, 95–16145.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 18, 1996.

Decided Dec. 17, 1996.

B.J. Rothbaum, Jr., Linn & Helms, Oklahoma City, Oklahoma, for defendants-appellants.

Robert A. Swift, Kohn, Swift & Graf, P.C., Philadelphia, Pennsylvania, for plaintiff-appellee.

Before: FLETCHER, PREGERSON and RYMER, Circuit Judges.

FLETCHER, Circuit Judge:

Imelda R. Marcos and Ferdinand R. Marcos, substituted under Rule 25 as representatives of the Defendant Estate of Ferdinand E. Marcos ("the Appellants"), appeal from orders of the district court holding them in contempt. We affirm.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

This appeal arises out of post-judgment orders in a case involving nearly 10,000 class plaintiffs (referred to hereinafter collectively as "Hilao") who suffered (or are family members of those who suffered) torture, "disappearance", and summary execution during Ferdinand E. Marcos' tenure as president of the Philippines. In 1991, anticipating that Hilao would succeed on the merits, the district court entered a preliminary injunction prohibiting the Defendant Estate, and its agents, representatives, aiders and abettors from disposing of any assets of the Estate.[1] Hilao subsequently obtained a verdict of liability and an award of nearly $2 billion in damages. The district court's final judgment of February 3, 1995 made the preliminary injunction permanent.[2]

In January of 1995, Hilao moved for contempt, claiming that agreements made in 1992 between the Republic of the Philippines and Imelda Marcos and Ferdinand R. Marcos, on behalf of the Estate of Ferdinand E. Marcos and themselves as heirs, violated the preliminary injunction by (1) agreeing to transfer artworks beneficially owned by the Defendant Estate from the United States to the Philippines; and (2) agreeing to divide all

---

1. The preliminary injunction was appealed and was affirmed by this court in *Hilao v. Estate of Ferdinand Marcos (In re Estate of Ferdinand Marcos, Human Rights Litigation)*, 25 F.3d 1467, 1476–1480 (9th Cir.1994) (*"Estate II"*), cert. de-

nied, ––– U.S. –––, 115 S.Ct. 934, 130 L.Ed.2d 879 (1995).

2. We decide the Estate's appeal from the final judgment, No. 95–15779, 103 F.3d 767, in a

assets owned by the Estate between the Republic and the Appellants.[3]

The district court ordered Hilao to conduct discovery regarding the allegations in the contempt motion. Depositions of Imelda Marcos and Ferdinand R. Marcos were scheduled for March 16 and 17, 1995. Deponents were instructed to produce all agreements with the Republic (including but not limited to the 1992 agreements) at their deposition, but they failed to appear and to produce the documents, and Hilao moved for sanctions.

In April 1995, additional agreements between Appellants and the Republic were publicly revealed. These agreements had been signed in 1993 and provided more specifically for the division of the Marcos Estate: 75 percent would go to the Republic, and 25 percent to Appellants, with Appellants receiving their share free of Philippine taxes.

Hilao filed a Supplemental Motion for Contempt identifying the 1993 agreements as additional violations. Hearings were held in April and May 1995. As a sanction for Appellants' failure to appear, testify, and produce documents at their depositions, the Court deemed established Plaintiffs' factual allegations in their contempt motions, and further found that those facts were substantiated by evidence produced by Plaintiffs.

With the facts in Hilao's motions deemed established, the Court concluded that those facts constituted a violation of the injunction. The Order Granting Plaintiffs' Motion for Contempt was filed May 26, 1995.

A hearing on additional sanctions was held in June of 1995 resulting in an order granting additional relief for the contempt. The additional relief consisted of requiring Appellants to execute an assignment to the Plaintiffs of enumerated Swiss bank accounts containing Estate assets.

Appellants appeal from the orders of contempt, denying that Imelda Marcos and Ferdinand R. Marcos are appropriate subjects of a contempt motion and denying that any violation of the Injunction occurred.

## JURISDICTION

The district court in Hawai'i had jurisdiction over the class action that resulted in the nearly $2 billion judgment under 28 U.S.C. § 1350. *See Trajano v. Marcos (In re Estate of Ferdinand E. Marcos Human Rights Litigation)*, 978 F.2d 493, 501–03 (9th Cir.1992) *("Estate I")*, *cert. denied*, 508 U.S. 972, 113 S.Ct. 2960, 125 L.Ed.2d 661 (1993); *Estate II*, 25 F.3d at 1472–74. In its final judgment, the district court expressly retained continuing jurisdiction over the motion for contempt, the permanent injunction and other matters. The post-judgment orders of contempt appealed here are within this court's jurisdiction under 28 U.S.C. § 1291 as final and appealable orders. *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983) (a post-judgment civil contempt order imposing sanctions acquires the "operativeness and consequence" necessary to finality under § 1291).

## STANDARD OF REVIEW

A district court's civil contempt order is reviewed for an abuse of discretion. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir.1995). The imposition of discovery sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure is also reviewed for an abuse of discretion. *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 771 (9th Cir. 1995).

## DISCUSSION

### I. Discovery Sanctions

Following Appellants' failure to appear for their depositions and to produce documents, Hilao moved for sanctions under Rule 37 of the Federal Rules of Civil Procedure. Failure to appear for a deposition may be sanctioned by "[a]n order that ... desig-

---

separate opinion filed contemporaneously with this opinion.

**3.** Some of the artworks included in the 1992 agreements were subsequently sold in the United States as the result of a consent order concluding a federal suit in New York in which Imelda Marcos had intervened. The proceeds of the sale, after payment of certain creditors, were distributed according to the consent order to Imelda Marcos and the Republic of the Philippines.

nated facts shall be taken to be established . . .". Fed.R.Civ.P. 37(b)(2)(A), (d). In the Order Granting Plaintiffs' Motion for Contempt, the district court sanctioned the Appellants' failure to appear by deeming the factual allegations in Hilao's motion for contempt to be established.[4]

In arguing against the motion for contempt, Appellants basically ignore the effect of this sanction. They repeatedly claim that no evidence supports the allegations in Hilao's motion, as if the sanction had not occurred and the facts had not been deemed established.

Even if we assume, without deciding, that Appellants have appealed the discovery sanction,[5] the district court did not abuse its discretion. The sanction imposed is one explicitly authorized by Rule 37 for failure to appear at a deposition, and Appellants do not contest their failure to appear. For a sanction this severe, we have required that the party's failure must have been willful or in bad faith. *Commodity Futures Trading Comm'n*, 67 F.3d at 771. The fact that Appellants have made no attempt to explain or excuse their failure to appear suggests that the failure was deliberate. We conclude that the district court did not err in deeming the allegations of Hilao's motions for contempt to be established.

*II. Facts Established*

■ Appellants argue that Hilao has shown no evidence that Ferdinand E. Marcos had an estate; no evidence of any assets belonging to any such "estate"; no evidence that Appellants have any control over any such assets; and no evidence of an agreement between the Republic of the Philippines and Imelda Marcos and Ferdinand R. Marcos on behalf of either such an estate or themselves. Appellants deny that any such facts have been established and argue that without evidence of such facts, there can be no finding of contempt.

**4.** The court further found that those facts were substantiated by evidence produced by Hilao.

**5.** Nowhere in Appellants' brief do they challenge the sanction as improperly imposed, so they appear to have waived their appeal of the sanction.

All of those facts, however, are established either through the findings of the district court contained in the final judgment granting the permanent injunction or through the Rule 37 sanction imposed by the district court in the contempt proceedings. In its final judgment, the district court made the following finding of fact:

> There is a probability that the Estate has assets other than the foreign bank accounts identified by the Estate's legal representatives.

Although the Estate has appealed from this final judgment, in that appeal it has not challenged the findings of fact made by the district court in granting the permanent injunction.

By operation of the discovery sanctions in the contempt proceedings, the following additional facts were established:

> Even after entry of the Injunction Imelda Marcos and Ferdinand R. Marcos, on behalf of themselves and the Estate, continued a course of conduct aimed at preventing Plaintiffs and the Class from recovering on an ultimate judgment.
>
> . . .
>
> Imelda Marcos and Ferdinand R. Marcos, on behalf of the defendant Estate and themselves as heirs, and the Republic of the Philippines entered into two agreements on June 26, 1992 which [ ]:
>
> a. agree[d] to transfer art works beneficially owned by the defendant Estate from the United States to the Philippines; and
>
> b. agree[d] to divide all assets owned by the defendant Estate between the Republic and the heirs of the Estate.
>
> . . .
>
> The division of assets will effectively divest the Estate of any assets upon which Plaintiffs and the Class can execute, while giving hundreds of million of dollars of assets to Imelda Marcos and Ferdinand R. Marcos tax free.

*All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1434 (9th Cir.1993), *cert. denied*, 510 U.S. 1194, 114 S.Ct. 1301, 127 L.Ed.2d 653 (1994).

. . . .

In late January 1995 Ferdinand R. Marcos publicly admitted that he had travelled to Switzerland in July 1994 as part of a deal with the Republic to transfer and split the Estate assets.

. . . .

On April 5, 1995 Philippine counsel for the contemnors filed with a court in the Philippines a Petition seeking dismissal of all legal proceedings against them, their family members and the Estate as a result of two agreements entered into on December 28, 1993 between the contemnors and the Republic. . . .

The December 28, 1993 agreements provide, *inter alia:*

a. the Republic and the Estate will divide all assets of the estate 75/25 with the Marcos heirs receiving their 25% tax free.

b. all legal proceedings against the Estate and Marcos heirs would be dismissed.

c. the Marcos heirs agree to cooperate with the Republic to effect the transfer of all monies held in accounts in Switzerland.

The establishment of these facts through the imposition of the discovery sanction was proper, and they support the district court's grant of the motion for contempt.

### III. *Violation of Injunction*

The injunction (in both its preliminary and permanent forms) states:

The defendant Estate, and its agents, representatives, aiders and abettors are, until satisfaction of the judgment herein, permanently enjoined and restrained from directly or indirectly:

(1) transferring, conveying, encumbering, dissipating, converting, concealing, or otherwise disposing of in any manner any funds, assets, claims or other property or assets owned actually, equitably or benefi-

cially by, or in the possession or custody of or held by or in any way on behalf of or for the benefit of the Estate of Ferdinand E. Marcos . . .

### A. *Appellants Subject to Injunction*

■ Appellants argue that they are non-parties to this litigation and have not been appointed as personal representatives of the Estate. They argue that their status leaves them powerless to transfer or alienate assets of the Estate, and therefore incapable of being in contempt of an injunction forbidding transfer and alienation. Appellants acknowledge their voluntary substitution as legal representatives of the Defendant Estate for the purposes of defending this action, but argue that in spite of the substitution, they remain non-parties.

Appellants' arguments regarding their status as non-parties are without merit. Rule 25(a)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties". The substituted party steps into the same position as original party. *Ransom v. Brennan,* 437 F.2d 513, 516 (5th Cir.), *cert. denied,* 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). As properly substituted parties in this case, Appellants obviously are not non-parties.[6] Appellants clearly had notice of, and were subject to, the terms of the injunction.

### B. *1992 and 1993 Agreements*

Appellants argue that there is no evidence of the authenticity of the agreements and that mere negotiation and signing of the agreements (without implementation) cannot violate the injunction.

The authenticity of the agreements is an established and unchallenged fact found by the district court. The district court has made an unchallenged finding of fact that the Appellants entered into those agreements "on behalf of the defendant Estate and them-

---

**6.** Even if Appellants were considered "non-parties", they could be held in contempt for violation of the injunction because they had notice of it. Rule 65(d) of the Federal Rules of Civil Procedure provides that an injunction is binding upon "the parties to the action [. . .] and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

selves as heirs". It is true that the injunction did not explicitly forbid "attempts" to transfer assets of the Estate. The district court, however, found that the Appellants made a "deal with the Republic to transfer and split the Estate assets". The district court was thus well within its discretion in finding that the 1992 and 1993 agreements violated the injunction.

### C. Sale of Art Works

Appellants argue that the sale of the art works did not violate the injunction because the artworks were the personal property of Imelda Marcos and did not belong to the Estate. However, an allegation of the Estate's ownership of the art works was included in Hilao's motion for contempt and is consequently deemed established by operation of the discovery sanctions.

 Appellants also contend that the sale cannot violate the injunction because the art works were sold and the proceeds distributed as part of a consent order entered by Judge Connor to settle an interpleader action in New York in which Imelda Marcos had intervened. Imelda Marcos voluntarily agreed to the consent orders, which provided for the sale of the art works and for distribution of the proceeds according to a settlement agreed upon by the parties in the New York action. Since Imelda Marcos negotiated a settlement and consented to an order that directly violated the injunction without informing Judge Connor of the injunction, she cannot now claim that the consent order was an act of the court which excuses the violation.

### CONCLUSION

Because the factual findings of the district court in its permanent injunction and in its sanctions for discovery violations establish the factual predicate for the district court's finding of contempt, we affirm.