**20TH CENTURY FOX FILM CORPORATION,**
Plaintiff,

v.

**M.V. SHIP AGENCIES, INC.; Sturgeon Atlantic, Ltd.; M/V Sturgeon Atlantic, her engines, tackles, apparel, etc. in rem, Defendants.**

**No. 97–109–Civ–J–21C.**

United States District Court,
M.D. Florida,
Jacksonville Division.

April 15, 1997.

James F. Moseley, Jacksonville, FL, for Plaintiff.

Alan B. Vlcek, Jacksonville, FL, for Defendants.

## *ORDER SETTING BOND*

CORRIGAN, United States Magistrate Judge.

This matter is before the Court on defendants' Motion to Set Bond and for Release of Vessel (Docs. # 43 and 44) filed March 31, 1997. The declaration of Amrit P. Singh was attached to defendant's Motion (hereinafter "Singh Declaration"). The Court held a hearing on the motion on April 1, 1997. Plaintiff's Memorandum in Support of Bond (Doc. # 47) was filed on April 9, 1997 as was the declaration of Buddy Enright (Doc. # 50) (hereinafter "Enright Declaration"). After reviewing the motion, memoranda, affidavits, and arguments of counsel at the hearing, the Court is satisfied that the amount of plaintiff's claim "fairly stated" is **$158,918.00** and sets the amount of the bond in that amount.

On February 11, 1997, this Court issued an Order directing the issuance of Process of Attachment and Garnishment on the vessel Sturgeon Atlantic. (Doc. # 10). Defendants seek to release the vessel M/V Sturgeon Atlantic by the posting of a bond. The parties disagree as to the methodology of determining the amount of the bond.

Supplemental Admiralty Rule E(5)(a) provides that whenever a maritime attachment is issued, "the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk." If the parties are unable to stipulate to the amount of a bond (and the parties in this case have been unable to so stipulate) the court may set a bond in a principal sum "sufficient to cover the amount of the plaintiff's claim **fairly stated** with accrued interest and costs ..." (emphasis supplied); the bond may not, however, exceed twice the amount of plaintiff's claim or the appraised value of the attached property, whichever is smaller.[1]

---

1. Rule E(5)(a) in its entirety reads: **(5) Release of Property.**

Defendants Ship Agencies and Sturgeon Atlantic, relying on the Singh Declaration, assert that plaintiff's claim "fairly stated" is "about $1,300", and argue that the Court has the discretion to look beyond the four corners of the complaint to make a preliminary finding as to the amount "fairly" owed. Plaintiff asserts that the Court's inquiry is limited to an acceptance of the damages as asserted in the complaint, akin to a motion to dismiss, and that absent fanciful or absurd damages, the Court is bound by the mathematical damage figure contained in the Complaint. Plaintiff alleges its claim is $126,678.80 (as itemized in Exhibit "B" to the Second Amended Verified Complaint in Admiralty [Doc. # 32]) which with interest at 6 percent per annum for 24 months is a subtotal of $141,880.25 (*Id.*), plus $37,925.00 in custodial charges as of April 1, 1997 (Plaintiff's Memorandum in Support of Bond [Doc. # 47]). Added, these itemized sums total $179,805.25, and bringing the custodial charges current through April 11, 1997, plaintiff's Memorandum requests a bond not to exceed $185,000. (Doc. # 47). Plaintiff relies both on Supplemental Rule E(5)(a) and Local Rule 7.05(i)(1)(A), the latter of which provides in relevant part for release of property in accordance with Supplemental Rule E(5) by consent or stipulation (neither of which is present here) in an amount equal to or greater than, "the amount alleged to be due in the complaint, with interest at six percent (6%) per annum from the date claimed to be due to a date forty-eight (48) months after the dated the claim was filed, . . . ."[2]

The release of vessels from arrest or attachment is governed by 28 U.S.C. § 2462 or by the Admiralty Rules; the Rules procedure is generally followed, rather than the statutory procedure which provides for security of twice the amount claimed. *Overstreet v. Water Vessel "Norkong"*, 706 F.2d 641, 643 n. 12 (5th Cir.1983); *Folkstone Maritime, Ltd. v. CSX Corp.*, 1988 WL 58592 (N.D.Ill.1988), appeal dismissed, 866 F.2d 955, *cert. denied*, 493 U.S. 813, 110 S.Ct. 60, 107 L.Ed.2d 27 (1989). While guiding standards are sparse (and the parties were able to provide the Court with only limited authority governing the standards for setting the bond) when parties cannot agree on a bond amount, affidavits as to the amount of plaintiff's claim "fairly stated" have been considered in setting bonds under Supplemental Rule E(5)(a). *Angad v. M/V Fareast Trader*, 1989 WL 201605 (S.D.Tex.1989). The Court may look beyond the "four corners" of the claim in

(a) **Special Bond.** Except in cases of seizures for forfeiture under any law of the United States, whenever process of maritime attachment and garnishment or process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court. The parties may stipulate the amount and nature of such security. In the event of the inability or refusal of other parties so to stipulate the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum.

**2.** In its entirety Local Admiralty Rule 7.05(I)(1) provides:

**(I) Release of Property in Accordance with Supplemental Rule (E)(5):**

**(1) Release by Consent or Stipulation:** Subject to the limitations imposed by Supplemental Rule (E)(5)(c), the Marshal may release any vessel, cargo or property in his possession to the party on whose behalf the property is detained. However, as a precondition to release, the Marshal shall require a stipulation, bond, or other security, expressly authorizing the release. The authorizing instrument shall be signed by the party, or his attorney, on whose behalf the property is detained.

The stipulation, bond, or other security shall be posted in an amount equal to, or greater than, the amount required for the following types of action:

**(A) Actions Entirely for a Sum Certain:** The amount alleged to be due in the complaint, with interest at six percent (6%) per annum from the date claimed to be due to a date forty-eight (48) months after the date the claim was filed, or by filing an approved stipulation, or bond for the amount alleged plus interest as computed in this subsection.

The stipulation or bond shall be conditioned to abide by all orders of the Court, and to pay the amount of any final judgment entered by this Court or any appellate Court, with interest.

setting the bond. 7A Moores Federal Practice 2d Ed. ¶ E.13[2] at E–612–613:

> [the 'fairly stated' provision of Rule E(5)] indicates that the court is not bound by any monetary amount set forth in the complaint, but can look behind the complaint to ascertain the amount actually in controversy. Where the amount sought is liquidated, there should be little trouble in determining the 'claim basis', and the amount of damages sought in the complaint should be used as the basis for determining the amount of the bond or deposit unless the claim is blatantly or obviously overstated. Where the claim is unliquidated and the parties cannot agree as to the amount of the bond, it will be incumbent upon the court to make some effort to place a reasonable value on the claim.

See also *Whitney–Fidalgo Seafoods, Inc. v. Miss Tammy*, 542 F.Supp. 1302, 1303–04 (W.D.Wash.1982); *Konstantinidis v. Denizcilik Bankasi*, 307 F.2d 584 (2d Cir.1962).[3]

The Court is convinced that the damages claimed here are more in the nature of unliquidated and that the "fairly stated" standard of Supplemental Rule E(5)(a) governs the Court's decision (as contrasted with the mechanical non-discretionary standard suggested by plaintiff under the Local Rules which appears applicable in the event of consent or stipulation as to the amount of the bond). Therefore, in determining the amount of plaintiff's claim fairly stated the Court has carefully reviewed the Singh Declaration, the Enright Declaration, the Second Amended Verified Complaint and exhibits thereto and makes the following findings:

By way of background, the dispute between the parties concerns a Time Charter Agreement wherein plaintiff modified and then utilized the vessel Sturgeon Atlantic in the production of a movie entitled "Speed Two". The Singh and Enright Declarations make the following factual proffers as to the categories of damages itemized in Exhibit "B" to the Second Amended Complaint.

### 1. Classification Costs: $25,000.00

■ Plaintiff alleges it was forced to pay $25,000 in excessive costs for reclassifying the vessel to "Rina class", which amount represents one-half of the total $50,000 reclassification fee.

The Singh Declaration [4] asserts the $25,000 charge is not due and that plaintiff agreed to pay the costs of the Rina classification. The Singh Declaration states "we" paid the $50,000.00, were reimbursed by plaintiff, there was never an agreement for "us" to pay for the reclassification and the vessel could not have progressed to St. Martin without a classification.

The Time Charter Agreement between the parties does not specifically address Rina classification except in Paragraph 10 which provides: "[i]t is specifically agreed that performance under this Charter Agreement is conditioned upon survey and classification society approval for the vessel and planned vessel modifications." This language is contained in a paragraph wherein the Charterer (plaintiff) agrees to pay for survey of the vessel to determine the condition of the vessel. Paragraph (9) provides that plaintiff has the right to modify the vessel in accordance with certain plans and the obligation to return the vessel in the same condition as when received, subject to normal wear and tear.

The Enright Declaration [5] (Paragraph 9) asserts there was an agreement memorialized in a September 9, 1996 memo from Paul Moen of plaintiff to Bill O'Donnel [6] specifical-

---

**3.** The Court notes that *Techem Chemical Co. v. M/T Choyo ·Maru*, 416 F.Supp. 960, 970 (D.Md. 1976) cited by defendants at the hearing, although recognizing general equitable powers of an admiralty court, concerned security on counterclaims under Supplemental Rule E(6) and (7) which have "good cause" and "for cause shown" standards in reducing or setting bonds in instances of reduction or impairment.

**4.** Captain Singh was the captain of the Sturgeon Atlantic.

**5.** Buddy Enright was the United Production Manager for plaintiff Twentieth Century Fox during the filming of "Speed Two".

**6.** Bill O'Donnel is an employee of defendant and an addressee on a letter dated January 9, 1997 to Mr. O'Donnel and Captain Singh advising of material breaches of the Time Charter Agreement. (Exhibit "C" to the Second Amended Verified Complaint in Admiralty).

ly stating that of the $50,000 reclassification fee, Mr. O'Donnel agreed to pay any share of the fee determined by the principal surveyor "to be not specific to the modifications done by SPEED TWO"; in other words that plaintiff would be liable for costs associated with the temporary modifications it did and the Owner (defendant[s]) would be responsible for normal expenses incurred in the new classification. Enright avers that plaintiff paid the entire $50,000 charged by the RINA classification society and the Owner (defendant[s]) never presented an itemized bill from the classification society as had been agreed. Enright's declaration also asserts that reclassification could not have been done except at the Owner's behest and plaintiff would have had no authority to reclassify.

In sum, the proffered facts are that reclassification of the vessel cost $50,000. Plaintiff paid the entire sum and seeks to assess defendant(s) with one-half of that cost. Without prejudging who will ultimately prevail, plaintiff's claim appears arguable; thus, the $25,000 amount is "fairly stated".

**2. Tug Services for support of the ship while one of the engines was malfunctioning: $85,800.**

The Time Charter Agreement requires plaintiff pay for all pilotage and towage. Singh's Declaration asserts plaintiff required the vessel to look like it was going to run up on the rocks and to hold position during the shoot in windy conditions with cross currents. For safety and other reasons this could not be done without tug support. He discussed the use of assist tugs with plaintiff's production manager and marine coordinator and they agreed. Also, a Cayman island agency required the tug be there for any emergency evacuation because at times there were 100 people on board. Captain Singh also states that the tugs were already tending barges that plaintiff had on the set and were being paid for by plaintiff.

Enright's Declaration asserts in Paragraph 3 that the vessel was not in first class operating condition as required by the Time Charter Agreement, only one of the two engines would work and the vessel would not go in reverse. As a direct result tugs had to

be utilized to assist in maneuvering and docking and the amount of tug charges "... arising directly from the poor operating condition of the Sturgeon Atlantic totaled $91,-800.00." Paragraph 4 of the Enright Declaration asserts further that O'Donnel agreed with Steven Perry, Executive Producer for the movie, that plaintiff could deduct the tug charges from future charter hire and Mr. O'Donnel then reneged on this agreement and protested when the deductions were made; therefore plaintiff immediately remitted the balance and is not seeking that sum from defendant(s).

Without prejudging who will ultimately prevail, plaintiff's claim appears arguable; thus the $85,000 amount is "fairly stated".

**3. Tug services for docking: $6,000.00**

As per Exhibit "B" another $6,000.00 is itemized for tug services. This sum appears to be included in the $91,800.00 for tug charges included in Enright's Declaration and addressed above (but is not duplicative of the damages addressed therein). The Time Charter Agreement provides that towage fees are plaintiff's responsibility but that the owner (defendant[s]) are liable for repairs except those resulting from work or modifications to the vessel by plaintiff. (Para.6.)

The Singh Declaration asserts that due to the fact the vessel had no bow thrusters or stern thrusters, some adverse weather conditions and modifications made by plaintiff, it was impossible to moor the vessel without the use of docking tugs. (Para.6).

Without prejudging who will ultimately prevail, plaintiff's claim appears arguable; thus the $6,000 amount is "fairly stated".

**4. Marine Engine mechanic: $9,878.80**

According to Exhibit "B" these charges are for services and expenses of Kurt Rohstrom to repair the engines and reverse mechanism.

The Singh Declaration alleges in Paragraph 7 that there was an intermittent minor problem with a pump on the port engine; he was approached by plaintiff's production manager who asked if they could bring in an

expert at plaintiff's expense. According to Captain Singh, defendant(s)' crew had to remedy the work done by plaintiff's expert, however Singh concedes the $1,067 charge for overtime work is due to plaintiff.

The Enright Declaration asserts inadequate mechanical functioning of the vessel prevented its use during shooting; plaintiff tried to have the owner fly in a mechanic to fix it. When this couldn't be arranged, plaintiff flew in their own mechanic in an effort to mitigate damages, as each day of shooting in St. Martin cost plaintiff about $400,000 plus union charges of $25,000 and $9,000 of catering charges. (Para.5). Despite attempts to mitigate, still two days of shooting time were lost with extra expenses of $825,000.00. (Para.6).

Without prejudging who will ultimately prevail, plaintiff's claim appears arguable; thus, the $9,878.80 amount is "fairly stated".

### 5. Travel costs for Captain Singh: $2,659.00

The final charge in Exhibit "B" is for costs associated with flying in Captain Singh and his companion to St. Martin.

The Singh Declaration asserts plaintiff knew from the outset that he was not going to sit around and wait for shooting to commence and that plaintiff agreed that Captain Issac (Singh's relief captain) could handle things until shooting began. Plaintiff paid for these items and Captain Singh agreed to reimburse upon production of invoices, which has not yet occurred.

The Time Charter Agreement requires the owner employ the captain and any crew members who shall furnish all wages and expenses. (Para.2.)

The Enright Declaration asserts that Captain Singh was required to be with the vessel all the time as that was the basis for the $75,000 a month charter hire paid by plaintiff; Singh refused requests to be with the vessel as was his contractual obligation and only agreed to travel to St. Martin if the costs of his transportation (and that of his companion) were paid by plaintiff.

While the Court would be inclined to find this claim "fairly stated", plaintiff's Second Amended Verified complaint in Admiralty (Doc. # 32, ¶ 10) requests damages totaling only $126,678.80 as itemized in Exhibit "B" thereto. Either by design or oversight plaintiff is not claiming the $2,659.00 discussed in the Enright Declaration and Exhibit "B", otherwise the claim would total $129,337.80 which is $2,659.00 more than the $126,678.80 requested. Accordingly, the Court finds the $2,659.00 as itemized is not "fairly stated" for purposes of setting a bond.

### 6. Custodial expenses

Plaintiff also requests the bond include custodial expenses totaling approximately $37,925.00. Custodial fees may be taxable costs under 28 U.S.C. § 1921 and Supplemental Rule E(4)(e). For the purpose of setting a release bond and without prejudice to future determinations in arbitration or otherwise to disallow or assess the custodial fees in a different manner, the Court has reviewed the custodial fees requested to be included in the bond amount as follows. Charges after the date of the hearing on April 1, 1997 are disallowed because the Court allowed plaintiff additional time to submit memoranda and affidavits to support the bond amount. Moreover, arguably, the vessel was in dry-dock in Jacksonville at plaintiff's behest in fulfillment of plaintiff's obligations under the Time Charter Agreement; therefore at least some wharfage and other custodial fees could ultimately be deemed plaintiff's responsibility. The Court is also concerned that a portion of the requested charges were incurred incident to the transfer of the vessel from Detyens Shipyards (the initial custodian) to North Florida Shipyards (the current custodian), a move requested by plaintiff due to prior dock commitments of Detyens. Without prejudice to a future binding determination as to allocation of custodial expenses, the Court allows as costs to be added to the bond amount custodial fees of $17,038, one-half of fees through April 1, 1997, and the amount suggested by defendants' counsel at the hearing.

### CONCLUSION

The Court is not making any determination as to whether plaintiff will ultimately

prevail on the merits of its claim or, if so, the amount of any judgment, matters to be resolved by the parties through arbitration or by future proceedings in this Court. Moreover, in setting the amount of this bond, the Court is mindful that any ultimate recovery against the *res* itself is limited to the amount of the bond; therefore it is prudent to err on the high side. 7A Moores Federal Practice 2d Ed., ¶ E.13[2] at E–613. Therefore, the Court concludes that the amount of plaintiff's claim "fairly stated" with interest at 6% for 24 months and costs for bond purposes is $158,918.00[7] and sets the bond in that sum. This finding is, of course, without prejudice to any findings that may be made in the arbitration proceeding pending in this matter or in later proceedings in this Court and is further subject to the right of any interested party to move for better or lesser security pursuant to Local Admiralty Rule 7.05(j). Accordingly, it is hereby

### ORDERED:

1. The Motion to Set Bond and for Release of Vessel (Docs. # 43 and 44) is **granted** and the United States Marshal and Substitute Custodian, North Florida Shipyards, are directed to release the vessel and/or property currently being held by the custodian in the above-styled action upon defendants posting a bond in the sum of **$158,918.00** and delivering a copy of this Order and a copy of the bond to the Marshal and North Florida Shipyards.

2. Ship Agencies' Motion for Corporate Verification (Doc. # 30) is **moot** in light of the filing of the Corporate Verification of Second Amended Verified Complaint (Doc. # 49). However, the Corporate Verification does not contain the attached Exhibit "A" referenced therein. Plaintiff shall file a complete Corporate Verification of Second Amended Verified Complaint on or before **April 24, 1997.**

3. Plaintiff's Motion for Supplemental Process of Attachment and Garnishment (Doc. # 24) filed February 28, 1997, is **moot** in light of this Order.

---

7. The Court is limiting the amount of the claim fairly stated to the $126,678.80 specifically requested by plaintiff, which together with $15,201.45 (24 months of interest at 6%) and with partial custodial costs of $17,038.00 (one-half of $34,075.00 representing fees through April, 1997 [Doc. # 46]) total $158,918.00 (rounded).